Rafael Saurí y Elizabeth Tyrrel de Saurí demandantes y apelados, *v.* William W. Woolard, Anna Belle Rollins, Clara Upton, Pedro Juan Serrallés Galiano y Juan Quesada, demandados y apelantes los dos últimos.

No. 3915.—*Visto:* Noviembre 12, 1926. *Resuelto:* Abril 29, 1927.

1. Cumplimiento Específico—Procedimientos y Remedio—Pruebas.—En acción sobre cumplimiento específico de contrato bajo la teoría de que un agente, antes de vender a una tercera persona la propiedad de su mandante, había efectuado con el demandante un contrato de compraventa que fué ratificado por dicho mandante, para privar a dicha tercera persona de la propiedad, el demandante está obligado a probar que ella tenía conocimiento del supuesto contrato perfeccionado entre el agente y el demandante.

2. Vendedor y Comprador—Comprador de Buena Fe—Conocimiento del Comprador—En General.—En ausencia de demostración de que un demandado principal—verdadero comprador de una propiedad—tuviera intervención o conocimiento de los actos habidos entre otras partes en el pleito, su título no puede ser destruído.

3. Fraude—Acciones—Evidencia—En General.—La mala fe no se presume; debe probarse claramente.

4. Vendedor y Comprador — Compradores de Buena Fe—Títulos y Derechos que Adquieren—Protección Contra Contratos de Compraventa Anteriores.—En ausencia de algo que priva a una persona de su carácter de tercero, o de fraude en la transacción, suponiendo que, respecto a una propiedad, hubiera habido tal cosa como una doble venta, el comprador que primeramente inscribe su título es preferido definitivamente.

5. Cumplimiento Específico—Contratos Ejecutables *(Enforceables)*—Necesidad de que los Contratos Estén Perfeccionados.—No demostrándose la autoridad del agente, el ofrecimiento de pasar éste a su mandante una oferta verbal de compra héchale más bien indica que aquél no tenía autoridad para obligar a éste mediante un contrato de compraventa; y cuando con posterioridad el agente solicita la oferta por escrito y no se le suministra, bajo las circunstancias, nada hay recíprocamente obligatorio para las partes y ninguna puede exigir la consumación del supuesto contrato.

6. Diligenciamientos *(Process)* — Servicio — Servicio Personal en General—Personas que Pueden Ser Emplazadas—Agente de Una Parte.—Cuando se emplaza a una persona como agente de unos demandados y no se demuestra su autoridad para aceptar por ellos tal emplazamiento, éstos nunca han estado ante la corte debidamente.

7. Apelación y Error—Presentación y Reserva en la Corte Inferior de los Fundamentos de Revisión—"Issues" y Cuestiones en la Corte Inferior—Necesidad de que se Presenten en la Corte Inferior.—El Supremo preferirá abstenerse de decidir definitivamente la cuestión relativa a la supuesta falta de jurisdicción de un tribunal por ausencia de partes necesarias, cuando no aparece que dicha cuestión se levantara en la corte inferior.

SENTENCIA de *Gabriel Castejón*, J. (Guayama), declarando con lugar la demanda sobre cumplimiento de contrato de compraventa, con costas. Revocada, desestimándose la demanda.

*Francisco Parra Capó, Manuel A. Rivera* y *Alberto S. Poventud,* abogados de los apelantes; *R. V. Pérez Marchand,* abogado de apelados.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

Este pleito tiene por objeto el cumplimiento específico de un contrato sobre compraventa de una finca. La corte inferior dictó sentencia a favor de los demandantes, que son marido y mujer. Uno de los principales demandados en el pleito era William W. Woolard, que era uno de los dueños anteriores de la finca en cuestión y quien según se alegaba representaba a los otros dueños. Otro demandado lo era Juan Serrallés Galiano, quien obtuvo la escritura de la finca de William W. Woolard y de los otros condueños de la misma por conducto de Juan Quesada, y quien logró incribir la finca en el registro de la propiedad. Quesada era el apoderado de dichos anteriores dueños para la venta de la finca y se incluyó como parte demandada.

[1] En esencia, la teoría de la demanda era que Quesada, el agente, antes de vender la propiedad de sus mandantes a Serrallés, había efectuado un contrato de compraventa con los demandantes, que fué ratificado por William W. Woolard. Necesariamente, para privar a Juan Serrallés de esta propiedad, los demandantes estaban obligados a probar que éste tenía conocimiento del contrato que se suponía haber sido perfeccionado entre los agentes de Woolard *et als.* y dichos demandantes. Trataron de probar esta obligación alegando que antes de cerrarse la venta Serrallés tenía conocimiento de una demanda radicada por los demandantes en este caso contra los distintos demandados. En realidad aparece que al tiempo de radicar su demanda los demandantes no tenían conocimiento del título inscrito a favor de Serrallés, de suerte que para imputarle conocimiento en vista de la inscripción tenían que enmendar su demanda.

[2,3] Abora bien, como Serrallés adquirió la finca en cuestión antes de entablárse el pleito contra él se hacía necesario que los demandantes demostraran que Serrallés había procedido de mala fe. La corte inferior presumió la mala fe de Serrallés más no expúso los hechos de los cuales debía inferirse la misma. Con frecuencia hemos resuelto que la mala fe debe probarse claramente.

Antes de quedar consumada la venta en este caso, según declara la señora Saurí, uno de los demandantes, ella se encontró con el Sr. Serrallés en Aibonito, y, refiriéndose a la finca en cuestión, le dijo: "Fíjese que bonita finca yo tengo." Y él le contestó: "Me gustaría ser dueño de ella." Serrallés dijo que no recordaba haber oído a la Sra. Saurí haber hecho tal manifestación. El manifestó que al tiempo de hacerse tal observación él estaba de prisa. Estamos dispuestos a creerle cuando dice que no tenía conocimiento de los hechos en que ella se fundaba. Además, la observación no tendió a probar un contrato consumado entre los demandantes y algunos de los demandados mencionados. Era consistente con la intención por parte de la Sra. Saurí de aquirir la finca que ella consideraba como suya. No imputaba conocimiento al demandado Serrallés ni le ponía sobre aviso. Aun suponiendo que esta observación tendiera a demostrar que la Sra. Saurí había perfeccionado un contrato con Quesada, agente de los condueños, no obstante, la prueba es enteramente consistente con el hecho de que Quesada posteriormente pudo haber dicho a Serrallés, sea cierto o no, que el contrato con los esposos Saurí nunca había sido perfeccionado.

Igualmente los apelados en su alegato llaman la atención al supuesto hecho de que Serrallés tenía conocimiento de la supuesta venta entre Woolard y los Saurí antes de efectuar su contrato con Woolard por mediación de su mandatario autorizado, Quesada. Si los apelados quieren decir que la Sra. Saurí hizo alguna otra manifestación a Serrallés antes de los Saurí recibir un cablegrama de Woolard,

no hallamos tal aseveración en los autos.  Cuando varias personas están tratando de adquirir la misma finca y una de ellas logra la compra de la misma, si su título puede ser destruído por manifestaciones tan vagas de uno de sus rivales, la adquisición de una propiedad resultaría en verdad insegura.

Por otra parte, si los apelados descansan en la aceptación cablegráfica de Woolard a la oferta de los Saurí y en haber enseñado el cable a Serrallés, se presenta entonces otro aspecto de la cuestión.  La prueba nos convence de que para aquel entonces Serrallés había hecho su oferta a Quesada y que este último la había aceptado a nombre de Woolard.  Este aceptó por cable el 4 de agosto la oferta de Serrallés.  Después de esa fecha, quizás propiamente desde su punto de vista, haciendo caso omiso del agente Quesada, fué que los Saurí cablegrafiaron a Woolard directamente y recibieron respuesta de él aceptando su oferta.

Los apelados confían algo en esta aceptación.  Hay un amplio campo dentro de la equidad que permite que una de las partes modifique un documento otorgado bajo un error de hecho.  Sin embargo, de acuerdo con la ley, según la entendemos, una de las partes a un supuesto contrato puede modificar su consentimiento al mismo si lo ha prestado debido a un error de hecho sin antes ejecutarlo y pedir después que sea reformado.  La ley no exige cosas vanas e innecesarias.  Resultó que Woolard había recibido la oferta de Serrallés por conducto de Quesada sin tener conocimiento de quién era el supuesto comprador y creyó que el cable de los Saurí era del comprador que Quesada había hallado.  Cuando se le explicó el asunto, dejó toda la venta en manos de Quesada, quien, de acuerdo con el entendido que él había concertado con Serrallés, dió los pasos necesarios para consumar la venta a éste último.  No tenemos dudas de que Woolard estaba procediendo enteramente dentro de sus derechos al retirar su aceptación cablegráfica.  Ciertamente

que no puede imputársele a Serrallés ningún fraude de hecho, por haberle mostrado los Saurí el cable de Woolard.

Iremos al extremo de suponer que al tiempo de la aceptación cablegráfica de Woolard a Saurí la transacción entre Quesada y Serrallés no había sido del todo consumada. No obstante, a menos que Serrallés tuviera conocimiento absoluto de un contrato consumado entre Woolard y los Saurí, no puede imputársele fraude, ni aun el habérsele mostrado el cablegrama enviado erróneamente por Woolard. Aún tenía derecho a inducir a Woolard directamente, o por conducto de Quesada, a que le vendiera. La presunción de honradez permitiría a una corte inferir que Quesada aseguró a Serrallés que él tenía derecho a efectuar la venta.

[4] De suerte que en ausencia de una demostración de fraude, Serrallés tiene a su favor la disposición de ley de que cuando existe una doble venta, suponiendo que hubiera tal cosa, la persona que primeramente inscribe su título se prefiere definitivamente. Código Civil, artículo 1376.

[5] Hasta aquí hemos estado tratando este caso como si Quesada, en cuanto tenía autoridad para ello, había consumado el contrato con los Saurí. Los autos no nos convencen de esto. Todo lo que la prueba demuestra, según la hemos leído, es que los Saurí en el mes de mayo hicieron una oferta a Quesada y que éste convino en transmitirla por cable a Woolard. La autoridad de Quesada para obligar a Woolard en aquel entonces no está del todo resuelta y el hecho de que tuvo que comunicarse con su mandante tiende a probar que no había tal autoridad. Posteriormente Quesada le pidió a los Saurí una oferta escrita. No se la suministraron. El cable posterior de Woolard tiende a demostrar que él interesaba una oferta escrita del supuesto comprador. Bajo estas circunstancias no había nada recíprocamente obligatorio para Woolard ni para los Saurí. Ninguna de las partes podía exigir la consumación del supuesto contrato.

No haremos mucho hincapié en el hecho de que en todo este asunto Woolard estaba en entera libertad de hacer lo que quisiera, exceptuando, desde luego, el cable enviado por equivocación. Nada hay en los autos que demuestre que hasta el mes de agosto o septiembre se había dado a Quesada plena autoridad para vender. No encontramos que Quesada defraudara a los Saurí. Aun si lo hubiese hecho, su conducta no era obligatoria para con Woolard, quien estaba en absoluta libertad de vender a Serrallés, según lo hizo finalmente por conducto de sus agentes. Los demandantes, si tenían algunos derechos, no podían utilizarlos contra Serrallés o Woolard, sino contra Quesada. A este respecto es bueno notar que la corte inferior eximió a Woolard de toda culpa.

Es un detalle sin importancia, pero que tiene alguna sigficación, que Woolard nunca prestó todo su consentimiento hasta que obtuvo plena autoridad de los otros mandantes. Posiblemente deseaba una oferta escrita, ya que alguna actuación de la corte era necesaria.

[6,7] Los apelantes han atacado la jurisdicción de la corte inferior, ya que según alegan ellos los vendedores Woolard *et als.* nunca fueron emplazados o citados debidamente. No tenemos dudas de que Woolard y sus condueños nunca estuvieron debidamente ante la corte. Se trató de emplazar a Quesada como agente de Woolard y de los otros vendedores, pero no se demuestra que Quesada tuviera autoridad para aceptar tal emplazamiento. No importa lo mucho que él haya sido el agente de Woolard en otros respectos, tal hecho no implica la autoridad de aceptar el emplazamiento.

Sin embargo, en la demanda enmendada que tenemos a la vista, no solamente se pedía que Woolard y sus condueños o su agente fuesen obligados a otorgar una escritura a los Saurí, sino también que los demandados (queriendo decir con ello, probablemente, Serrallés) entregaran la finca a los demandan-

tes. Para cumplir con esta súplica, la corte creyó necesario ordenar la cancelación en el registro de la escritura de Woolard y los otros a Serrallés, aunque tal cosa no se pedía directamente en la demanda. Así, la demanda toma un carácter algo complejo. Probablemente Woolard y los otros pudieron incluirse como partes y citarse por edictos, en vista de que la propiedad estaba situada enteramente dentro de la jurisdicción. En cuanto a Serrallés se refería, el remedio final solicitado era que su título y la inscripción de la propiedad fuesen anulados. Por tanto, nos repugna tener que decir que la Corte de Distrito de Guayama no tenía jurisdicción para ningún fin y tenemos ideas de que habiéndose obligado a Serrallés a defenderse, debe dictarse una sentencia a su favor que sería *res adjudicata* en tanto que esta corte tiene tal facultad.

Por tanto, especialmente como no aparece que la cuestión fué levantada en la corte inferior, preferimos abstenernos de decidir definitivamente la supuesta falta de jurisdicción por ausencia de partes necesarias. *Debe revocarse la sentencia y desestimarse la demanda en uno u otro caso, y así se ordena.*

El Juez Asociado Sr. Hutchison no intervino.