James G. Schwartz et al., peticionarios, *v.* Tribunal de Distrito de Puerto Rico, Sección de San Juan, Hon. R. Ramírez Pabón, Juez, demandado; The First National Bank of Miami, Fla., Etc., interventor.

Núm. 1939.—*Sometido:* Septiembre 8, 1952. *Resuelto:* Octubre 3, 1952.

*James R. Beverley* y *Francisco Castro Amy,* abogados de los peticionarios; *Charles R. Hartzell, Rafael O. Fernández* y *Daniel F. Kelley, Jr.,* abogados del interventor.

El Juez Asociado Señor Ortiz emitió la opinión del tribunal.

Los peticionarios en este recurso de certiorari radicaron, en el antiguo Tribunal de Distrito de Puerto Rico, Sección de San Juan, una demanda de liquidación y partición de bienes gananciales contra The First National Bank of Miami, Miami, Florida, alegándose en la demanda que esta última entidad corporativa, domiciliada en Florida, fué instituída como única y universal heredera bajo el testamento de William Arthur Hutton, en su carácter de "fideicomisaria" (fiduciaria) para beneficio de Mrs. Vera Bryce por el término de su vida, y a su muerte la plena propiedad a varias instituciones caritativas. Alegan los demandantes que su causante Elizabeth N. Schwartz fué la esposa de Hutton y que, al morir ambos, dejaron bienes gananciales que consistían, en parte, en una finca localizada en Puerto Rico, dineros depo-

sitados en bancos en Puerto Rico y Florida y dos bonos de ahorro de los Estados Unidos localizados en Florida, cuyos bienes fueron dejados en el testamento a la demandada. Se solicita en la demanda que se practique la partición y división de esos bienes gananciales.

Después de haberse ordenado el aseguramiento de sentencia en cuanto a tales bienes, se diligenció el emplazamiento, con notificación de la demanda, en la persona del abogado Herbert S. McConnell, como alegado agente de la demandada. Previa moción al efecto, el tribunal de San Juan ya mencionado dictó una resolución decretando la nulidad del diligenciamiento del emplazamiento. Esa resolución es la que se impugna en este recurso de *certiorari*.

El día 3 de diciembre de 1949, un funcionario debidamente autorizado de The First National Bank of Miami, Miami, Florida, suscribió un Poder a nombre de Herbert S. McConnell, domiciliado en San Juan, Puerto Rico, que, copiado a la letra en su texto original, dispone lo siguiente:

"PODER

"SEPAN TODOS LOS QUE LA PRESENTE vieren que la corporación *The First National Bank of Miami, Miami, Florida,* con oficina principal en la ciudad de Miami, Condado de Dade, Estado de Florida, por la presente designa a Herbert S. McConnell. de la ciudad de San Juan, Puerto Rico, para que actúe como su apoderado, y a su nombre y en su lugar ejecute todos los actos, otorgue todos los documentos y realice cualquier gestión relativa o conectada con la herencia, bienes o asuntos de *William Arthur Hutton,* quien falleció en o para el 30 de noviembre de 1949, en Dorado, Puerto Rico, incluyendo (sin limitar la generalidad de lo antes expuesto) poder para cobrar, recibir, reclamar o demandar cualquier participación a distribuir, legado o reclamación de cualquier clase, naturaleza o descripción que ahora o en el futuro pueda tener derecho contra la herencia del referido finado *William Arthur Hutton,* incluyendo cualquier participación a distribuir, legado o reclamación de clase alguna, naturaleza o descripción, que pueda tener en contra o que ahora o en el futuro pueda tener derecho contra la referida herencia

como fiduciario para beneficio de cualquier otra persona; poder para recurrir a cualquier tribunal o a cualquier juez o jueces de cualquier tribunal en Puerto Rico en solicitud de que se nombre un administrador, albacea, custodio, síndico o cualquier otro representante personal de la herencia de dicho finado *William Arthur Hutton;* poder para aceptar o consentir al nombramiento de tal administrador, albacea, custodio, fiduciario o cualquier otro representante personal de dicha herencia de cualquier persona o corporación, incluyendo el poder de aceptar tal nombramiento a su propio nombre y de actuar como tal representante personal a nombre propio; el poder de contratar abogados y de actuar él mismo como abogado; de pagar las contribuciones, transigir reclamaciones contributivas, comparecer a representarlas ante cualquier autoridad contributiva o realizar cualquier gestión o firmar cualquier documento relativo a cualquier responsabilidad contributiva que surja o pueda surgir a tenor con las leyes de los Estados Unidos de América o de Puerto Rico; y por la presente se revoca cualesquiera otros poderes anteriores o autorizaciones en relación con este asunto.

"Se le concede a nuestro referido apoderado completa autoridad y facultad para que realice cualquiera o cualesquiera actos o gestiones que sean requeridos, necesarios o propios en relación con este asunto en el sitio correspondiente, a cabalidad, para todos los fines y propósitos, según lo pudiere hacer la mandante si estuviera presente personalmente; y le concede a dicho apoderado completo poder y autoridad para sustituir y nombrar de tiempo en tiempo cualquier apoderado o apoderados bajo su dirección y con los mismos o con poderes más limitados, pudiendo prescindir de los servicios de tales apoderados sustitutos, y pudiendo nombrar otros, y por la presente se ratifica y confirma todo lo que dicho apoderado o su sustituto o sustitutos puedan legalmente hacer u ocasionar que se haga, en virtud de este poder.

"EN TESTIMONIO DE LO CUAL, la referida corporación ha firmado la presente a su nombre mediante sus correspondientes funcionarios y mediante el sello corporativo de la misma, autenticado por su cajero auxiliar, quien está debidamente autorizado para así hacerlo, hoy tres de diciembre de 1949, en Miami, Condado de Dade, Estado de Florida, Estados Unidos de América.

*"The First National Bank of Miami, Miami, Florida.*

Por: (*Fdo.*) *R. D. Rodabaugh,*
Funcionario de Fideicomiso.
Certifico: (*Fdo.*) *T. J. Trout,*
Cajero Auxiliar.

"En presencia de:
C. W. *Macfarlane*
H. M. *Harvey.*" (¹)

El 19 de diciembre de 1949 McConnell, representado por otro abogado, radicó en el Tribunal de Distrito, Sección de Bayamón, una petición solicitando ser nombrado (McConnell) Administrador Interino Auxiliar de los bienes relictos del finado William A. Hutton. Exponía McConnell que él solicitaba tal nombramiento en su carácter de apoderado de

---

(¹) El texto en inglés del Poder arriba copiado dice como sigue:

### "POWER OF ATTORNEY

"KNOW ALL MEN BY THESE PRESENTS that the undersigned, *The First National Bank of Miami, Miami, Florida,* a corporation with its principal place of business in the City of Miami, County of Dade, and State of Florida, does hereby appoint Herbert S. McConnell, of the City of San Juan, Puerto Rico, its attorney for it and in its name and stead to do all things, execute all documents and take every manner of action pertaining to or in connection with the estate, property or affairs of *William Arthur Hutton,* who died on or about November 30, 1949, in Dorado, Puerto Rico, including (without limiting the generality of the foregoing) the power to collect, receipt for, make claim for or sue for any distributive share, legacy bequest, or claim of any kind, nature or description, which it may have against or may now or at any future date be entitled to from the estate of the said *William Arthur Hutton,* deceased, including any distributive share, legacy, bequest, or claim of any kind, nature or description, which it may have against or may now or at any future date be entitled to from said estate as a trustee for the benefit of any other person; the power to apply to or petition any Court or the judge or judges of any Court in Puerto Rico for the appointment of an administrator, executor, curator, trustee or other personal representative of the estate of said *William Arthur Hutton,* deceased; the power to accept or consent to the appointment as such administrator, executor, curator, trustee or other personal representative of the said estate of any person or corporation, including the power to accept such appointment himself in his own name and to act as such personal representative in his own name; the power to employ counsel and to act as counsel himself; the power to pay taxes, settle or compromise tax claims, appear or represent it before any tax authority, or take any action or sign any

The First National Bank of Miami, Florida, para que él pudiera actuar en Puerto Rico como auxiliar de esa corporación, la cual había sido designada como administradora de la herencia de Hutton por una Corte de Florida. El Tribunal de Distrito de Bayamón designó a McConnell como Administrador Judicial permanente de tales bienes, previa la prestación de la correspondiente fianza. Se le ordenó a que procediera a dar los pasos necesarios para la partición de la herencia.

■ Siendo la demandada y aquí interventora una corporación extranjera, para que los tribunales de Puerto Rico puedan adquirir un poder efectivo sobre ella se hace necesario el cumplir dos requisitos, o sea, el que tal corporación haya efectuado negocios (*done business*) en Puerto Rico y

document relating to any tax liability which arises or may arise under the laws of the United States of America or of Puerto Rico; hereby revoking all former powers of attorney or authorizations whatever in the premises.

"Giving and granting unto its said attorney full power and authority to do and perform all and every act and thing whatsoever, requisite, necessary or proper to be done in and about the premises, as fully, to all intents and purposes, as it might or could do if personally present, giving and granting unto its said attorney full power and authority to substitute and appoint from time to time any attorney or attorneys under him, the said attorney, with the same or more limited powers, and such substitute or substitutes at pleasure to remove, and another or others to appoint, hereby ratifying and confirming all that its said attorney, or his substitute or substitutes shall lawfully do, or cause to be done, by virtue hereof.

"IN WITNESS WHEREOF, the said corporation has caused their presents to be signed in its name by its proper officer, and its corporate seal to be affixed, attested by its Assistant Cashier, who is duly qualified and authorized to do so, this third day of December, 1949, at Miami, County of Dade, and State of Florida, in the United States of America.

"*This First National Bank of Miami, Miami, Florida.*

By (*signed*) *R. D. Rodabaugh*
Trust Officer.
Attest: (*signed*) *T. J. Trout*
Assistant Cashier.

"In the presence of:
*C. W. Macfarlane*
*H. M. Harvey.*"

el que ella haya consentido al ejercicio de tal poder por nuestros tribunales. *Restatement of the Law of Conflict of Laws,* sec. 89; Moore's *Federal Practice,* Vol. 2, pág. 969, 2d ed; *Stetson China Co.* v. *D. C. Andrews & Co.,* 9 Federal Rules Decisions 135 y *Jacobowitz* v. *Thomson,* 141 F.2d 72 El dictar una sentencia contra una corporación extranjera sin haberse cumplido con esos requisitos implicaría la imposición de una penalidad sin concederle a esa entidad el beneficio de una vista, sin haberse observado un debido proceso de ley. Sería contrario a la cláusula constitucional que garantiza un debido proceso de ley el dictar una sentencia contra una corporación organizada bajo las leyes de otro estado, cuando esa corporación no efectúa negocios en la jurisdicción donde se impone la sentencia, o no tiene bienes en esa jurisdicción o no tiene allí un agente debidamente autorizado a quien se pueda emplazar y notificar la demanda. *Riverside Mills* v. *Menefee,* 237 U. S. 189; *Bagdon* v. *Phil & Reading C. & I. Co.,* 217 N. Y. 432.

■■ Consideremos, en primer término, si de los documentos en autos, asumiendo que los hechos en ellos expuestos sean ciertos, surge que la interventora y demandada, The First National Bank of Miami, haya estado efectuando negocios en Puerto Rico en la fecha en que se diligenció el emplazamiento en la persona de McConnell. Se hace preciso el determinar cuál es la regla aplicable a la situación de hechos envuelta en este caso. Originalmente, la Corte Suprema de los Estados Unidos, en el caso de *Bank of Augusta* v. *Earle,* 38 U.S. 519, 588, había indicado, en un *dictum,* que una corporación no podía emigrar a otra jurisdicción, ya que ella "no puede tener existencia legal fuera de las fronteras de la soberanía que la creó". Se infería de tal dictamen que una corporación extranjera nunca podía ser demandada en otro estado distinto al de su domicilio por incorporación.(²) La propia Corte Suprema de los Estados

---

(²) Se ha sugerido que este pronunciamiento se originó en la impresión equivocada, formada en los inicios del desarrollo de la ley de cor-

Unidos repudió posteriormente este concepto, atendiendo a la realidad de que las corporaciones desarrollan actividades económicas a través de agentes, fuera del estado de su creación. *St. Clair* v. *Cox*, 106 U.S. 350. Sin embargo, las cortes empezaron a crear dos ficciones legales para justificar el ejercicio del poder judicial sobre corporaciones extranjeras, una, la del consentimiento implícito, al efecto de que al hacer negocios dentro de un estado, la corporación consentía implícitamente a someterse al poder de los tribunales en la jurisdicción donde se efectuaban los negocios, y la otra, la de la "presencia" corporativa, predicada en la tesis de que la corporación estaba presente donde estuvieran sus agentes promoviendo los fines corporativos. (³)    Bajo esas doctrinas, las cortes indicaban que una corporación extranjera hacía negocios dentro de un estado si su conducta, a través de sus agentes, era continua y sistemática.    *St. Clair* v. *Cox*, supra; *Connecticut Mutual Life Inc. Co.* v. *Spratley*, 172 U.S. 602; *International Harvester Co.* v. *Kentucky*, 234 U.S. 579; 34 *Calif. L. Rev.* 331, 334 y 2 Moore's *Federal Practice* 971, 2da. ed.

Finalmente, la Corte Suprema de los Estados Unidos ha adoptado una nueva norma para definir lo que constituye el "hacer negocios" por una corporación extranjera a los fines del ejercicio constitucional del poder judicial sobre tales entidades.    En el caso de *International Shoe Co.* v. *Washington*, 326 U.S. 310, vendedores empleados por una corporación del Estado de Delaware, con oficina principal en Missouri, exhibían artículos y solicitaban órdenes de compradores potenciales en el Estado de Washington.    La corporación arrendaba oficinas y cuartos en Washington, a los fines de exhibición de los artículos, y pagaba las rentas.    En la opinión del

---

poraciones privadas, de que todas las entidades corporativas eran análogas a corporaciones municipales.    30 *Harv. L. Rev.* 686.

(³) Ambas teorías han sido criticadas e impugnadas, por constituir tecnicismos que no correspondían a la realidad y por no cubrir todas las situaciones de actuaciones corporativas.    Véanse 30 *Harv. L. Rev.* 676; 32 *Harv. L. Rev.* 871; 29 *Col. L. Rev.* 187, 188 y 46 *Mich. L. Rev.* 1130.

Juez Presidente Stone se dijo, en parte, lo siguiente, a la página 316:

"Históricamente, la jurisdicción de las cortes para dictar sentencias 'in personam' se basaba en su poder defacto sobre la persona de un demandado. Por lo tanto, su presencia dentro de la jurisdicción territorial de una corte era un requisito previo a la rendición de una sentencia personalmente obligatoria. *Pennoyer* v. *Neff,* 95 U.S. 714, 733 . . . ."

"En vista de que la personalidad corporativa es una ficción, aunque siempre estaba envuelta la intención de que se actuase a base de la ficción como si fuera un hecho, . . . es claro que, en forma distinta a un individuo, su 'presencia' se puede manifestar solamente a través de actividades que se lleven a cabo en su nombre por aquellos que estén autorizados para así hacerlo. El decir que la corporación está tan 'presente' en el estado que satisface los requisitos del debido proceso de ley, . . . es asumir el argumento o cuestión que se está decidiendo. Los términos 'presente' o 'presencia' se usan meramente como símbolos de aquellas actividades de un agente de la corporación que las cortes consideran como suficientes para satisfacer las exigencias del debido proceso de ley. . . . Esas exigencias se pueden cumplir por tales contactos con el estado del foro que hagan razonable, en nuestro sistema federal de gobierno, el que se obligue a la corporación a defenderse en determinado litigio. Un estimado de las inconveniencias que se podrían causar a la corporación si tuviese que defenderse en un caso fuera de su 'hogar', . . . es relevante en cuanto a este punto. . . .

"Es evidente (pág. 319) que el criterio que señala la frontera entre aquellas actividades que justifican el sometimiento de una corporación a pleito y aquellas que no lo justifican, no puede ser sencillamente mecánico o cuantitativo. La norma no es . . . si la actividad corporativa . . . es un poco más o un poco menos . . . Si ha habido o no un debido proceso de ley depende más bien en la cualidad o naturaleza de la actividad en relación con una justa y ordenada administración de las leyes, lo cual es el propósito de la cláusula del debido proceso de ley. Esa cláusula no permite el que un estado pueda dictar una sentencia obligatoria 'in personam' contra un individuo o corporación con el cual o la cual el estado no tiene contactos, ligaduras o relaciones . . .

"Pero hasta el punto en que la corporación ejercita el privilegio de llevar a cabo actividades dentro del estado, ella disfruta de los beneficios y de la protección de las leyes de ese estado. El ejercicio de ese privilegio puede dar lugar a obligaciones, y si éstas surgen de, o están conectadas con, las actividades dentro del estado, un procedimiento que requiera de la corporación el que se defienda en un litigio incoado con el propósito de imprimirle efectividad a esas obligaciones, no puede ser injusto ni irrazonable . . ."

En síntesis, la Corte Suprema de los Estados Unidos no establece una regla fija y rígidamente definida. ([4]) De acuerdo con las circunstancias de cada caso, si es justo y es razonable que se someta a una corporación extranjera al poder estadual, ya sea porque esa corporación ha disfrutado de la protección de las leyes estaduales o porque ha tenido suficientes contactos con el estado para justificar tal sumisión y en el balance de conveniencias es más justo que el caso se vea en el territorio donde se han llevado a cabo ciertas actividades corporativas, entonces, desde el punto de vista de la justicia sustancial y de la razonabilidad, debe entenderse que la corporación ha estado efectuando negocios dentro del estado. Es posible que los hechos envueltos en el

---

([4]) Por esa razón la opinión en este caso de *International Shoe Co.* v. *Washington*, supra, es criticada en 34 *Calif. L. Rev.* 331, 336. Ese puede ser el defecto, pero es también la virtud, de todo concepto realista de las leyes. Las teorías legales no tienen auténtica significación si están divorciadas de su contenido vital, en cuanto a las realidades concretas. Incidentalmente, la doctrina del caso de *International Shoe Co.*, se aplicó posteriormente en forma liberal en los casos de *Nippert* v. *City of Richmond*, 327 U.S. 416, 162 A.L.R. 844 y de *Kilpatrick* v. *Texas Pacific Ry. Co.*, 166 F.2d 788, opinión del Juez Learned Hand, quien ya había anticipado esa doctrina en el caso de *Hutchison* v. *Chase & Gilbert*, 45 F.2d 139, 141, cuyo caso fué citado con aprobación en el de *International Shoe Co.* Tanto en el caso de *Nippert* como en el de *Kilpatrick* se resuelve que el hecho de solicitar órdenes constituye el hacer negocios, siendo ese dictamen contrario al de anteriores casos. Véase 2 Moore's *Federal Practice*, 2da. ed., Supp. 1950, pág. 59. En *United States* v. *Scophony*, 333 U.S. 795, 807, 808 se ratifica la doctrina del caso de *International Shoe*, supra, y se adopta el "concepto económico más práctico y más amplio" de hacer negocios a través de "actividades económicas sustanciales," cuya norma sustituye a los "refinamientos técnicos" que permitían a la corporación actuar y luego retroceder.

caso de *International Shoe Co.*, impliquen una conducta continua y sistemática dentro del estado de Washington, pero la norma general enunciada por la corte cubre casos en que la conducta corporativa no tenga tales características de continuidad y permanencia.

Aplicando esa norma a los hechos de este caso, del poder otorgado a favor de McConnell se desprende que la corporación demandada, aquí interventora, autorizó a McConnell a realizar múltiples actividades con relación a la herencia ("estate") de William A. Hutton, que debían ser consideradas como actuaciones de la corporación en sí. Se le faculta a efectuar cualesquiera actuaciones que sean necesarias con relación al *estate*, incluyendo ("sin limitar la generalidad de lo anterior") el cobrar, reclamar o radicar demandas en cuanto a cualquier participación o reclamación en la herencia; el solicitar de nuestros tribunales el nombramiento de un administrador de la herencia, el emplear o utilizar abogados o actuar como abogado él mismo; el pagar contribuciones o comparecer y representar a la corporación ante cualquier autoridad gubernamental con respecto a contribuciones o el tomar cualquier acción en lo relativo a responsabilidad contributiva. Se dice en el poder que McConnell tendrá plena autoridad para hacer todo lo que sea necesario y adecuado para todos los fines, como si la corporación estuviese presente ("as it might or could do if personally present"). Como cuestión de hecho, McConnell solicitó del tribunal de Bayamón que se le designase Administrador Interino Auxiliar ("Ancillary Administrator"), para servir como auxiliar de la corporación, que ya había sido designada Administradora permanente en Florida. El tribunal de Bayamón designó a McConnell como Administrador Judicial permanente en Puerto Rico.

Todos los hechos anteriores establecen que la corporación interventora ha estado haciendo negocios en Puerto Rico. Ha tenido suficientes contactos y ligaduras con nuestra jurisdicción para hacer razonable su sumisión a nuestros tribu-

nales.  No solamente ha recibido la protección de nuestras leyes sino que la ha invocado en forma afirmativa.  Ejerce actos de administración con respecto a bienes localizados en Puerto Rico y recibe rentas de esos bienes para ser entregadas a la beneficiaria del fideicomiso.  En el balance de conveniencias, no es injusto el obligarla a defenderse en nuestros tribunales, especialmente en vista de que ella recibe beneficios económicos como resultado de sus actuaciones en Puerto Rico, bajo la protección de nuestras leyes.  El disfrute de beneficios económicos debe ser función de su aptitud para ser responsabilizada en nuestras cortes. (⁵)  Es innecesario el citar la multitud de casos que se han resuelto en torno a si una corporación ha estado efectuando negocios en una jurisdicción extranjera.  Cada caso debe resolverse de acuerdo con sus propios hechos y circunstancias.  *Pueblo* v. *South Porto Rico Sugar Company*, 56 D.P.R. 661, 665.  Además, la jurisprudencia anterior debe ser considerada a la luz de las nuevas normas sentadas en *International Shoe Co.* v. *Washington*, supra. (⁶)  De todos modos, los comentarios expuestos en el *Restatement of the Law of Conflict of Laws* son aplicables a este caso.  En la sección 167 de esa

(⁵) Naturalmente, no anticipamos juicio en cuanto a los méritos de cualquier controversia judicial en que la corporación esté envuelta.  Nos limitamos a resolver que ella está haciendo negocios en Puerto Rico y que, por lo tanto, puede ser demandada en nuestros tribunales.

(⁶) En Puerto Rico, se resolvió en *Pueblo* v. *Central Aguirre Associates*, 63 D.P.R. 556, que la demandada hacía negocios aquí a través de Luce & Co., S. en C., subsidiaria y agente que ella controlaba y que, por lo tanto, ella se hallaba presente en la isla, siendo válido el emplazamiento diligenciado en la persona de Marcelo Obén, socio gestor de Luce & Co. Véase además, *Pueblo* v. *South Porto Rico Sugar Company*, supra.  En *Central Eureka, Inc.* v. *Gallardo, Tesorero*, 42 D.P.R. 639, se resolvió que aun cuando una institución bancaria extranjera no cumpla con los requisitos estatutarios locales, para hacer negocios en la isla, si de hecho tiene aquí un punto de negocios, oficina o agente a quien se le pagan intereses sobre préstamos aquí hechos, ella hace negocios aquí a través de un agente.  En *Mutual Rice Co., Inc.* v. *Sucn. Truyol*, 52 D.P.R. 7, una corporación extranjera que hacía contratos individuales por correo no hacía negocios aquí.  En *Caguas Co., Inc.* v. *Mombille*, 58 D.P.R. 300, se resuelve que el hecho de que una corporación extranjera sea tenedora por endoso de unos pagarés otorgados y a pagarse en la Isla, por sí solo

obra se define lo que constituye hacer negocios en la forma siguiente:

"La corporación debe efectuar una serie de actos similares con el propósito de obtener beneficios pecuniarios o, en alguna otra forma, llevar a cabo un objetivo, o puede hacer un solo acto con tales propósitos con la intención de iniciar una serie de actos."

Como ejemplo de la aplicación de esa regla, se cita, en la página 246, un ejemplo que es sustancialmente idéntico al caso de autos. Se dice:

"(8) A es dueño de una finca en el estado X. B es una corporación fiduciaria (*trust company*). A muere y designa en su testamento a la compañía B como administradora y fiduciaria. Al aceptar el fideicomiso y al hacer una distribución de las propiedades, B está haciendo negocios en X, aun si B no es fiduciaria de ninguna otra propiedad en X."

■ Debe señalarse, además, que las cuestiones relativas a la validez y a la administración de un fideicomiso de bienes inmuebles deben resolverse a base de la ley prevaleciente en la jurisdicción donde están los bienes inmuebles localizados, o sea, a base de las leyes de Puerto Rico, en el caso de autos. *Restatement of the Law of Conflict of Laws*, secciones 241 y 243; Land, *Trusts in the Conflict of Laws*, pág. 258, 263, 264; *Knox* v. *Jones*, 48 N.Y. 389; *Matter of Osborn*, 151

---

no constituye hacer negocios en la isla. En *Isabela Grove, Inc.* v. *Registrador*, 24 D.P.R. 257, se resuelve que el adquirir y poseer bienes inmuebles no implica que una corporación extranjera haga negocios en Puerto Rico. Ella se limitó a aceptar una escritura sobre bienes inmuebles, y aun si ella hiciera una hipoteca, ella no haría negocios aquí. En *Union Cen. Life Ins. Co.* v. *Tesorero de P. R.*, 19 D.P.R. 900, se resuelve que el hacer préstamos garantizados con hipoteca no es emprender negocios.

Es innecesario el discutir cuál sería el efecto de aplicar las normas establecidas en el caso de *International Shoe Co.* v. *Washington*, supra, en cuanto a la virtualidad de esas decisiones, ya que los hechos envueltos en este caso son distintos. Pero debemos señalar que en los casos de *Isabela Grove, Inc.* v. *Registrador*, supra y *Union Cen. Life Ins. Co.* v. *Tesorero de P. R.*, supra, las entidades concernidas recibían beneficios económicos que surgían de bienes aquí localizados, bajo la protección de nuestras leyes.

Misc. 52, 270 N.Y. Supp. 616 y *Swetland* v. *Swetland*, 149 Atl. 50, 153 Atl. 907. Ello implica la necesidad de la aplicación de nuestras leyes y convierte a nuestros tribunales en el foro (*forum*) más conveniente.

Determinemos si el emplazamiento expedido en este caso fué debidamente diligenciado en la persona de Herbert S. McConnell, como agente de la demandada e interventora. Este problema debe resolverse a base de lo dispuesto por el inciso (*d*) (4) de la Regla 4 de nuestras Reglas de Enjuiciamiento Civil, que provee lo siguiente:

"El diligenciamiento se hará. . . .
"(1) .      .      .      .      .      .      .      .
"(2) .      .      .      .      .      .      .      .
"(3) .      .      .      .      .      .      .      .
"(4) A una corporación del país o extranjera o a una compañía, sociedad u otra asociación no incorporada que pueda ser demandada bajo su nombre común, entregando copia del emplazamiento y de la demanda a un oficial, gerente o agente administrativo o general, o a cualquier otro agente autorizado por nombramiento o por ley para recibir emplazamientos." (7)

El cumplimiento de cualquiera de los tres siguientes requisitos implicaría la validez del diligenciamiento, o sea:

(1) Que McConnell fuese un agente autorizado por nombramiento para recibir el emplazamiento.

(2) Que él fuese un agente general de la corporación demandada.

(3) Que él fuese un agente administrativo de la corporación.

En cuanto a la autorización por nombramiento, el nombramiento debe ser real ("actual appointment"), o sea, que la designación se refiera a la autoridad del agente para recibir emplazamientos en nombre de la corporación. 2 Moore's *Federal Practice* 959, sec. 4.22, 2da. ed., *Szabo* v. *Keeshin Motor Express Co., Inc.*, 14 Fed. Rules Serv. 4d 131, case 1,

---

(7) La regla 4 (*d*) (3) de las Reglas de Enjuiciamiento Civil Federales es sustancialmente idéntica a la nuestra, con una excepción no aplicable al caso de autos.

10 F.R.D. 275 y *Fleming* v. *Malouf*, 10 Fed. Rules Serv. 4d 13, case 1, 7 F.R.D. 56.([8]) No es necesario que el documento que contenga tal nombramiento actual disponga específica y exactamente que el agente esté autorizado para recibir emplazamientos en nombre de la corporación. El agente debe ser nombrado en palabras que racionalmente se interpreten como indicativas de que él tiene esa autorización, ya que en aquellos casos en que un poder se confiere actualmente en un documento, el otorgante de ese documento asume el riesgo de la interpretación razonable que a ese documento le den las cortes. *Penna. Fire Ins. Co.* v. *Gold Issue Mining Co.*, 243 U.S. 93, 95, 96, opinión del Juez Holmes. El derecho ha progresado más allá de la etapa de la adoración de las palabras y subordina lo formal a lo sustancial. Al hablar de un agente autorizado por nombramiento, la Regla 4(*d*) (4) no establece categorías rígidas que produzcan una anquilosis en la interpretación judicial.

El poder otorgado en favor de McConnell lo autoriza a ejecutar todos los actos, otorgar todos los documentos y realizar todas las gestiones necesarias con relación a la herencia de William A. Hutton, a todos los fines y propósitos. Se sigue disponiendo que sus poderes específicos para formular reclamaciones y recurrir a cualquier tribunal en Puerto Rico no limita la generalidad de su autorización y se provee que McConnell sustituye a la corporación como si ésta estuviere presente.

Esa escritura de poder puede interpretarse racionalmente como creadora de una autoridad real o actual disfrutada por McConnell para ser emplazado en representa-

---

([8]) Es posible que la inclusión en las Reglas de Enjuiciamiento Civil del requisito de nombramiento real de un agente a los fines de recibir emplazamientos se base en el criterio anteriormente establecido por las cortes de que, en cuanto a causas de acción que surjan fuera de una jurisdicción en cuanto a una corporación que no haga negocios dentro de esa jurisdicción, la única forma de emplazar a esa corporación es mediante el diligenciamiento en la persona de un agente actualmente designado para recibir emplazamientos. *Penna. Fire Ins. Co.* v. *Gold . Issue Mining Co.*, infra, y *Bagdon* v. *Phil. & Reading C. & I. Co.*, supra.

·ción de la corporación. De todos modos, bajo la Regla 4 (d) (4) de las de Enjuiciamiento Civil el diligenciamiento es válido si se efectúa en la persona de un agente administrativo o, en la alternativa, de un agente general de la corporación extranjera. Un agente general es distinto a un agente administrativo ("managing agent") y, en cuanto a este último, los requisitos son más estrictos, pero un diligenciamiento válido puede efectuarse sobre cualquiera de esas dos clases de agente. *Jacobowitz* v. *Thomson,* supra, opinión del Juez Clark. En *Swarts* v. *Christie Grain & Stock Co.,* 166 Fed. 338, 342, también se establece la diferencia entre un agente administrativo y uno general ya que el primero controla, dirige o supervisa un negocio corporativo y el segundo tiene un *status* más generalmente representativo. Un agente general es aquel que está autorizado a conducir una serie de transacciones que envuelvan una continuidad de servicios. *Restatement of the Law of Agency,* sec. 3 (1). La facultad de ejercitar un criterio independiente es un factor a ser considerado, pero no es esencial si existe la continuidad en los servicios. Véanse *Todd Shipyards Corporation* v. *The City of Athens,* 83 F. Supp. 67, 88 y *Hackney* v. *Fairbanks, Morse & Co.,* 143 S.W. 2d 457. El agente general es aquel que disfruta de poderes amplios y generales, *Carver* v. *Preferred Accident Ins. Co.,* 256 N.W. 274, o que tenga autoridad para efectuar todos los negocios de su patrono de una clase particular o en un sitio particular, y que esté autorizado a actuar en representación de su patrono en todas aquellas cuestiones que estén incluídas dentro del curso o carácter ordinario del negocio de su patrono. *Warren Webster & Co.* v. *Zac Smith Stationery Co.,* 130 So. 545; *Federal Surety Co.* v. *White,* 295 Pac. 281; *Great American Casualty Co.* v. *Eichelberger,* 37 S.W.2d. 1050; *Bank of Ferguson* v. *Blick,* 115 S.W. 2d 27; *Evans* v. *Johnson,* 20 N.E. 2d 841, 847 y *Words and Phrases,* Vol. 18, pág. 117, edición permanente. No es necesario que la autoridad del agente se extienda sobre la totalidad del negocio del pa-

trono (*Hackey* v. *Fairbanks, Morse & Co.*, supra), ni es necesario que sea un funcionario de la corporación. *Vardeman* v. *Penn Mut. Life Ins. Co.*, 54 S.E. 66.

El Poder otorgado en favor de McConnell implica que este último es un agente general, a tono con las definiciones generales arriba señaladas. Sus facultades son muy amplias y generales y prácticamente sustituye a, y ocupa la misma posición de la corporación, en lo que se refiere al negocio de ella en Puerto Rico, en cuanto a la herencia de Hutton. Surge de dicho Poder que McConnell está autorizado para efectuar una serie continua de actividades en lo relativo a esa herencia.

En el caso de *United States* v. *Scophony Corporation*, 333 U.S. 801, 818, una corporación extranjera otorgó, al igual que en el caso de autos, un Poder General en favor de William Elcock autorizándolo a actuar y "obligar a la compañía en todos o cualesquiera asuntos que afecten a los intereses de la compañía en los Estados Unidos." Él fué autorizado a instituir y llevar a cabo todos los procedimientos que fuesen necesarios para conservar los intereses de la Compañía Scophony; el defender o transar cualesquiera litigios incoados contra la Scophony; el ajustar cuentas; el emplear y destituir subagentes; el obtener dinero a préstamo; el disponer de todos o cada uno de los bienes e intereses de la Scophony en los Estados Unidos y "generalmente el representar a la compañía en los Estados Unidos de América en cualesquiera asuntos de la compañía o que pudiesen afectar en alguna forma a la compañía." La Corte Suprema de los Estados Unidos resolvió que era válido el diligenciamiento de un emplazamiento en la persona de Elcock, en cuanto a una demanda presentada contra la compañía.

En el caso de *Boston Medical Supply Co.* v. *Lea & Febiger*, 195 F.2d 853 (Primer Circuito, opinión del Juez Magruder), se había demandado a una corporación extranjera que imprimía libros, y se emplazó en Massachusetts a unos vendedores de esos libros domiciliados en Massachusetts.

Ellos tenían autoridad sólamente para vender los libros bajo términos previamente especificados por la corporación extranjera. Se resolvió que aunque ellos fuesen agentes bajo la ley sustantiva de Massachusetts, ellos no eran agentes generales bajo la Regla 4 de las Reglas Federales de Enjuiciamiento Civil. Entendemos que ese caso es distinto al de autos. No se había otorgado poder alguno confiriendo una representación general, y los vendedores no podían ejercitar un criterio y discreción independiente. La autoridad de McConnell en el caso de autos es más amplia que la de los presuntos agentes en el caso de la *Boston Medical Supply Co.* Además, en este último caso los vendedores tenían un negocio independiente. 98 F. Supp. 13, en cuanto al mismo caso. En la opinión de la Corte de Circuito se cita el caso de *Diamond* v. *New York S. & W. R. Co.*, 18 F. Supp. 605, en donde se resolvió que un agente de varias compañías de ferrovías que distribuía boletos o *tickets*, no era un agente administrativo, ("managing agent") bajo la Ley de Procedimiento del Estado de Nueva York. No estaba envuelta la cuestión de si la persona emplazada era un agente general. El presunto agente no estaba sujeto a las órdenes de la entidad, no tenía poder alguno para hacer contratos, no podía emplear ni despedir empleados en representación de la compañía, no podía comprar equipo ni alquilar oficinas. Se dijo que el presunto agente tenía menos autoridad que un dependiente en una tienda. Por lo tanto, este último caso es claramente distinguible del de autos. En el otro caso citado por la Corte de Circuito en el de la *Boston Medical Supply Co.*, supra, o sea, el de *United States* v. *Nidera Uruguaya*, 8 F.R.D. 462, se trataba de un mero comisionista o corredor ("broker").

En el caso de *Neset* v. *Christensen*, 92 F. Supp. 78, se resolvió que el capitán de un barco que en sus visitas a Nueva York compraba equipo para su compañía era un agente administrativo. En *Waider* v. *Chicago R. I. & P. Ry. Co.*, 10 F.R.D. 263, 265, estaba envuelto el diligenciamiento de

un emplazamiento y se resuelve que un agente es aquel que tiene autoridad para crear, modificar, afectar y terminar obligaciones contractuales entre su patrono y terceras personas. McConnell cumple con esos requisitos.

En el caso de *De la Rosa* v. *Puerto Rico Motors,* 58 D.P.R. 341, 345 se resuelve que unos vendedores de automóviles ("dealers") que actuaban independientemente, bajo su propio nombre, pagaban gastos de oficina y empleados, recibían comisión de un 50 por ciento y aceptaban a consignación piezas y accesorios, eran unos agentes, a los fines del artículo 78 del Código de Enjuiciamiento Civil, que dispone, en parte, que una corporación podrá ser demandada en cualquier distrito donde tenga un agente. Se dice que un agente es aquel que "se compromete a llevar a cabo algún negocio o a administrar algún asunto por cuenta de esa otra persona y a rendir cuentas del mismo".

En *Saurí* v. *Woolard,* 36 D.P.R. 662, un señor Quesada era un agente de compraventa (comisionista o corredor). Se resuelve que Quesada no tenía autoridad para recibir emplazamiento en nombre de un comprador, a quien Quesada le había comunicado una oferta de venta. El caso es distinto al de autos.

*Debe anularse la resolución recurrida y devolverse el caso para ulteriores procedimientos no inconsistentes con esta opinión.*

El Juez Presidente Señor Todd, Jr., no intervino.

El Juez Asociado Señor Sifre concurre con el resultado.