PAULA POU ET AL., demandantes y recurridos, *v.* AMERICAN MOTORS CORPORATION Y OTROS, demandados y peticionarios.

*Número* CE-87-5　　　　　*Resuelto:* 30 de enero de 1991

(11)　Ante el resultado a que hemos llegado, no es necesario discutir el tercer señalamiento de error.

*John Malley Vega,* de *McConnell, Valdés, Kelly, Sifre, Griggs & Ruiz-Suria,* abogado de los peticionarios; *Plinio Pérez Marrero,* abogado de los recurridos.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

Hoy nos toca resolver si al amparo de la Regla 4.4(e) de Procedimiento Civil, 32 L.P.R.A. Ap. III, el tribunal de instancia válidamente asumió jurisdicción sobre una corporación foránea mediante la entrega del emplazamiento y copia de la demanda a su distribuidor en Puerto Rico, una corporación doméstica.

A continuación sintetizamos los hechos que dieron lugar a esta controversia.

# I

*Los hechos*

Debido al resultado de un accidente automovilístico en el que estuvo involucrado un vehículo marca "Jeep", modelo CJ-5 del año 1980, los demandantes recurridos presentaron acción en daños y perjuicios contra Yuyo González, Inc. (Yuyo),[1] American Motors Corporation (A.M.C.) y Jeep Corporation (Jeep). Una vez el tribunal de instancia expidió los respectivos emplazamientos, éstos fueron diligenciados, junto con copia de la demanda, mediante entrega personal al Sr. Juan "Yuyo" González Rodríguez en las oficinas de su corporación en la ciudad de Ponce. Además de los emplazamientos y de la demanda, se le entregó una carta dirigida a la gerencia de Yuyo González, Inc., suscrita por el abogado de los demandantes, la cual dispone como sigue:

> Con la presente acompaño demanda dirigida a American Motors Corporation, Jeep Corporation of America y Yuyo González Inc., por un accidente en que estuvo envuelto un vehículo Jeep, según detalles que se explican en la demanda. *Yuyo Carrasquillo Inc. ha sido incluído [sic] como distribuidor y representante de American Motors Corporation y Jeep Corporation of America en Puerto Rico.* Por esta razón se le entregan también las demandas contra estas corporaciones. Suponemos que hará llegar estas [sic] a sus principales con la premura necesaria para que éstos actúen conforme a derecho. (Énfasis suplido.)

Yuyo no compareció al pleito en su contra. Tampoco comparecieron las codemandadas A.M.C. y Jeep. Así las cosas, los demandantes solicitaron anotación de rebeldía contra la parte demandada. En su moción alegaron que surgía de los emplaza-

---

(1) La demanda originalmente presentada incluía a "Yuyo Carrasquillo, Inc." como parte demandada. Posteriormente, mediante enmienda al efecto, se sustituyó a dicha parte por "Yuyo González, Inc." (Yuyo). En sentencia dictada en rebeldía contra las demandadas, el tribunal de instancia determinó que "Yuyo González, Inc." era la representante de las demandadas peticionarias en Puerto Rico. La sentencia en rebeldía no hace mención de la entidad "Jeep de Puerto Rico, Inc." (J.P.R.), corporación a través de la cual se alega que se intentó emplazar a las peticionarias y la cual sí es mencionada en la resolución objeto de este recurso. En esta opinión hacemos mención de ambas corporaciones, "Yuyo González, Inc." y "Jeep de Puerto Rico, Inc.", según surge de las propias comparecencias de las partes.

mientos obrantes en autos que las tres (3) corporaciones codemandadas fueron emplazadas a través del Sr. Juan "Yuyo" González Rodríguez. Alegaron, además, que junto con los emplazamientos se le entregó al señor González copia de la antes mencionada carta suscrita por el abogado de los demandantes, y señalaron que de ésta "surge la representación [de las codemandadas A.M.C. y Jeep] ostentada por el señor Yuyo González, recipiente de los emplazamientos". Apéndice, pág. 15.

· El tribunal de instancia celebró vista en rebeldía el 6 de octubre de 1983. En dicha vista se presentó toda la prueba testifical. Posteriormente, los días. 26 de octubre de 1983, 26 de enero y 15 de febrero de 1984, se presentó la correspondiente prueba documental. El 1ro de mayo de 1984 el tribunal de instancia dictó sentencia mediante la cual impuso responsabilidad a las codemandadas de forma solidaria. Las condenó a pagar $321,959.21 por concepto de compensación por los daños causados. Les impuso, además, el pago de las costas del proceso. Esta sentencia fue notificada mediante correo al señor González Rodríguez y al abogado de la parte demandante.

Las codemandadas peticionarias recibieron reclamaciones extrajudiciales en Estados Unidos mediante las cuales se les exigió el pago de la mencionada sentencia en rebeldía. Una vez enteradas de la existencia de dicha sentencia, comparecieron al tribunal y solicitaron que se les relevara de la misma. Regla 49.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Argumentaron que la sentencia era nula por haberse dictado sin jurisdicción sobre sus personas. Alegaron como fundamento la ineficacia de los emplazamientos. Arguyeron que la parte demandante sólo intentó diligenciar el emplazamiento y copia de la demanda en la persona del señor González Rodríguez o a través de Yuyo, como supuestos agentes residentes o representantes de Jeep y de A.M.C. en Puerto Rico, cuando éstos carecen de capacidad en derecho para recibir tales documentos a nombre de Jeep o de A.M.C. Presentaron varias declaraciones juradas, firmadas por oficiales de las codemandadas, en las que plantearon que debido a la falta de autoridad, y como cuestión de hecho, tanto el señor González

Rodríguez como Yuyo nunca les remitieron los emplazamientos y copia de la demanda. En síntesis, alegaron que A.M.C. y Jeep nunca fueron emplazadas en el pleito de autos.[2]

El 21 de agosto de 1986, el tribunal de instancia celebró una vista en la que recibió prueba documental y testifical relacionada con la controversia. Posteriormente, las codemandadas peticionarias presentaron un escrito en apoyo de su petición de relevo de sentencia en el cual expusieron los hechos pertinentes a la controversia que, a su entender, quedaron probados por los documentos que obran en autos y por la prueba documental y testifical desfilada en la vista de 21 de agosto. Luego procedieron a señalarle al tribunal que tanto A.M.C. como Jeep eran y son corporaciones foráneas, no domiciliadas o autorizadas por el Departamento de Estado a hacer negocios en Puerto Rico. Indicaron que no han designado agente residente y que el señor González Rodríguez nunca fue empleado ni contrató en su capacidad personal con A.M.C., Jeep o con cualquiera de sus subsidiarias o antecesoras. Alegaron, además, que el señor González Rodríguez siempre fue presidente y único accionista de Yuyo y de Jeep de Puerto Rico (J.P.R.), ambas corporaciones domésticas independientes. En cuanto a las relaciones comerciales que existieron entre Yuyo y las codemandadas peticionarias, éstas señalaron lo siguiente:

> Yuyo González, Inc. era un vendedor local ("dealer") de productos marca "Jeep" para el área de Ponce. En 1975 American Motors Pan American Corporation ("AMPAC"), subsidiaria de AMC, decidió nombrar a Yuyo González, Inc. distribuidor general no exclusivo de productos Jeep en Puerto Rico. Yuyo González, Inc. aceptó tal designación y firmó el contrato de distribución propuesto por AMPAC. El mismo no se perfeccionó porque, según el testimonio del señor González, se estimó que podrían surgir problemas de monopolio por la concesión de la distribución a Yuyo González, Inc. sobre otros vendedores. A esos efectos, las partes acordaron que el señor González organizaría una corporación separada, Jeep de

---

[2] Las codemandadas peticionarias plantearon que, "como corporaciones foráneas, no domiciliadas y sin agente residente en Puerto Rico, debieron haber sido emplazadas por edictos bajo el procedimiento establecido en la Regla 4.5 de Procedimiento Civil".

Puerto Rico, Inc. ("JPR"), lo cual hizo, y en noviembre de 1975 se perfeccionó entre éstos el mismo contrato de distribución anteriormente propuesto. En todo momento el señor González actuó libre y voluntariamente fomentando sus propios intereses de negocio. De hecho, el señor González requirió la adición de un suplemento a dicho contrato a los fines de incorporar en el mismo las disposiciones de la Ley 75 del 24 de junio de 1964, protectora de los intereses de distribuidores locales contra terminaciones por sus principales.

Para principios de 1983, cuando se propició el emplazamiento en este caso, las relaciones comerciales establecidas en 1975 entre AMPAC, AMC y Jeep y JPR habían deteriorado seriamente debido en parte a la decisión de AMPAC de nombrar a otro distribuidor general en Puerto Rico, "Casablanca Distributors". JPR estaba amenazando a AMPAC con demandarla y exigiendo en transacción la compra de todos los activos y plusvalía de JPR. Mediante carta fechada 25 de marzo de 1983, o sea, un mes antes del incidente de emplazamiento en este caso, JPC [sic] reiteró que no veía como [sic] *las relaciones de trabajo anteriormente existente* [sic] podían ser *reestablecidas* [sic], y exigió nuevamente la compra de sus activos como *única solución,* cosa que no ocurrió ya que el 7 de noviembre de 1983 JPR radicó petición de quiebras, Caso Núm. B-83-01695, In re: Jeep de Puerto Rico, Inc., de lo cual el tribunal puede tomar conocimiento judicial. (Exhibit I de las codemandadas).

La naturaleza y ámbito de la relación que una vez existió entre JPR y AMPAC se desprende de los términos del contrato de distribución suscrito entre éstos. El documento es claro. Sin duda alguna JPR asumió un sinnúmero de obligaciones contractuales estrictas obviamente encaminadas a asegurarle a AMPAC el adecuado desarrollo de un mercado local como lo es el de automóviles y accesorios a nivel de distribuidor general. El curso de negocios entre JPR y AMPAC necesariamente tenía que ser contínuo y caracterizado por cierto grado de supervisión periódica, aprobaciones y asistencia con recurso de AMPAC. Sin embargo, el contrato de igual forma revela el establecimiento de una relación de negocios entre dos entidades completamente independientes, cada una persiguiendo sus propios intereses y sólo incidentalmente promoviendo los intereses del otro.[3] (Énfasis en el original y escolio omitido.) Alegato en apoyo de la petición de relevo de sentencia, págs. 3–4.

_____

[3] Hemos examinado el expediente y los autos, y de ellos surge que los hechos narrados por las demandadas peticionarias efectivamente quedaron probados tal como ellas los han expuesto.

El 25 de noviembre de 1986 el tribunal de instancia dictó resolución mediante la cual denegó la solicitud de relevo de sentencia presentad a por las codemandadas peticionarias. Al así resolver concluyó que el señor González Rodríguez o Yuyo era "representante comercial" de las codemandadas en Puerto Rico, siendo aquélla una corporación "dedicad[a] exclusivamente y cread[a] *ad hoc* para asumir dicha representación", y como tal sus representadas pueden ser emplazadas a través de ésta. Resolución, pág. 1. En cuanto al asunto de si, como cuestión de hecho, Yuyo remitió o no copia de los emplazamientos y la demanda a las codemandadas peticionarias, el tribunal de instancia concluyó, "por preponderancia de la prueba", que los documentos fueron remitidos a A.M.C. y a Jeep.[4]

Mediante nota al calce, el tribunal de instancia señaló que tanto American Motors Pan American Corp. (A.M.P.A.C.), A.M.C. y Jeep "actuaron como una sola unidad contratante" con J.P.R. "y realizaron negocios en Puerto Rico a través de JPR sin la debida autorización para ellas así hacerlo". Resolución, pág. 2 n. 2.

No conformes con esta resolución, A.M.C. y Jeep presentaron solicitud de *certiorari*. Decidimos revisar y expedimos el auto.

En su comparecencia ante nos, las codemandadas peticionarias A.M.C. y Jeep alegan la comisión de dos (2) errores: que "[e]rró el tribunal de instancia al resolver que bajo la Regla 4.4(e) de Procedimiento Civil de Puerto Rico se puede emplazar válidamente a una corporación foránea mediante el diligenciamiento de la demanda y el emplazamiento a otra corporación local que opera como su distribuidor general, *máxime* cuando la relación entre éstas ha deteriorado sustancialmente" (Petición de *certiorari*, pág. 11), y que erró "al resolver que las peticionarias realizaron negocios en Puerto Rico a través de JPR en violación del Artículo 1401 de la Ley de Corporaciones, en efecto impartiéndole igual sentido al concepto de 'hacer negocios' en dicha ley y al de

---

[4] El tribunal resaltó, sin embargo, que esto es una "determinación secundaria", insuficiente, de no ser cierta, para dejar sin efecto la sentencia dictada en rebeldía una vez se determinó que Yuyo es representante de las codemandadas y está autorizado para recibir emplazamientos a nombre de éstas.

'efectuar transacciones de negocio' de las Reglas 4.7(a)(1) de Procedimiento Civil". Íd., pág. 9.

## II

*Normas generales de jurisdicción sobre la persona*

 Para que un tribunal pueda asumir jurisdicción sobre una persona natural o jurídica no domiciliada, el debido procedimiento de ley exige que se cumpla con dos (2) requisitos básicos: (1) que la persona haya tenido contactos mínimos con el foro y que la causa de acción surja de o esté relacionada con estos contactos (*Schwartz v. Tribl. de Distrito*, 73 D.P.R. 856 (1952); *A.H. Thomas, Co. v. Tribunal Superior*, 98 D.P.R. 883 (1970); *Medina v. Tribunal Superior*, 104 D.P.R. 346 (1975); *Ind. Siderúrgica v. Thyssen Steel Caribbean*, 114 D.P.R. 548 (1983); *Molina v. Supermercado Amigo, Inc.*, 119 D.P.R. 330 (1987); A.R. Kamp, *Beyond Minimun Contacts: The Supreme Court's New Jurisdictional Theory*, 15 Ga. L. Rev. 19 (1980)),(5) y (2) que el método utilizado para emplazar tenga una probabilidad razonable de notificar e informar al demandado sobre la acción entablada en su contra, de forma tal que pueda comparecer a defenderse si así lo desea (*Rodríguez v. Nasrallah*, 118 D.P.R. 93 (1986); *Granados v. Rodríguez Estrada II*, 124 D.P.R. 593 (1989); *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306 (1950)).

---

(5) La jurisprudencia norteamericana ha establecido algunos criterios o requisitos adicionales a considerarse al momento de un tribunal decidir si debe o no asumir jurisdicción sobre una corporación foránea. Entre otros, se ha señalado que los tribunales de los estados, entiéndase incluido a Puerto Rico para efectos del asunto aquí analizado, deben sopesar lo siguiente: (1) la carga que la litigación en el estado que asume la jurisdicción le impone a la parte demandada; (2) el interés del foro estatal en adjudicar la controversia y el interés del demandante en obtener resarcimiento; (3) el interés del sistema de justicia interestatal en que las controversias se resuelvan de la manera más eficiente, y (4) el interés compartido de los diversos estados en adelantar políticas sociales sustantivas y fundamentales. *Internat. Shoe Co. v. Washington State*, 326 U.S. 310 (1945); *Hanson v. Denckla*, 357 U.S. 235 (1958); *Shaffer v. Heitner*, 433 U.S. 186 (1977); *Kulko v. California Superior Court*, 436 U.S. 84 (1978); *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980); *Rush v. Savchuk*, 444 U.S. 320 (1980); *Helicópteros Nacionales de Colombia v. Hall*, 466 U.S. 408 (1984); *Burguer King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985); *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 113 (1987).

Con relación a los contactos mínimos necesarios, en *Schwartz v. Tribl. de Distrito*, supra, pág. 866, expresamos que éstos se determinan:

> De acuerdo con las circunstancias de cada caso, [considerando] si es justo y es razonable que se someta a una corporación extranjera al poder estadual, ya sea porque esa corporación ha disfrutado de la protección de las leyes estaduales o porque ha tenido suficientes contactos con el estado para justificar tal sumisión y en el balance de conveniencias es más justo que el caso se vea en el territorio donde se han llevado a cabo ciertas actividades corporativas, entonces, desde el punto de vista de la justicia sustancial y de la razonabilidad, debe entenderse que la corporación ha estado efectuando negocios dentro del estado.

Las corporaciones demandadas aceptan que las transacciones de negocios llevadas a cabo en Puerto Rico fueron suficientes y de una naturaleza tal como para constituir los contactos mínimos necesarios para poder someterlas a la jurisdicción de nuestros tribunales con relación al caso de autos. Cuestionan, sin embargo, el método utilizado para emplazarlas.

## III

*Emplazamiento de una corporación foránea al amparo de la Regla 4.4(e) de Procedimiento Civil*

■ Cuando se trata de una corporación foránea,(6) para asegurar el cumplimiento del requisito de informarle o notificarle adecuadamente, es necesario que el emplazamiento sea diligenciado en una persona, natural o jurídica, que con razonable certeza, por ser "un oficial, gerente administrativo o agente

---

(6) En aras de claridad y de la correcta utilización de la terminología, quisiéramos señalar que denominamos "foráneas" a aquellas corporaciones organizadas con arreglo a las leyes de cualquier estado o jurisdicción de Estados Unidos. A modo de ejemplo, véase Art. 902(a) de la Ley General de Corporaciones, 14 L.P.R.A. sec. 1902(a). Las corporaciones organizadas con arreglo a las leyes de cualquier país extranjero se denominan "extranjeras". Las organizadas con arreglo a las leyes del Estado Libre Asociado de Puerto Rico son las "domésticas". El análisis hecho en esta opinión se limita específicamente al proceso que debe seguirse para obtener jurisdicción *in personam* sobre las corporaciones foráneas de acuerdo con las disposiciones aplicables contenidas en nuestras Reglas de Procedimiento Civil.

general o cualquier otro agente autorizado por nombramiento o designado por ley para recibir emplazamientos", le haga llegar el mismo a la corporación demandada. Regla 4.4(e) de Procedimiento Civil, 32 L.P.R.A. Ap. III; *Rodríguez v. Nasrallah,* supra; *Mullane v. Central Hanover Tr. Co.,* supra. Sin embargo, si la corporación foránea no está presente en Puerto Rico o no ha designado en la isla un agente autorizado para recibir emplazamiento, ésta podrá ser emplazada mediante los procedimientos provistos en las Reglas 4.5 y 4.7 de Procedimiento Civil, 32 L.P.R.A. Ap. III, o en el Art. 1404 de la Ley General de Corporaciones, 14 L.P.R.A. sec. 2404, dependiendo de las circunstancias particulares de cada caso.

En el caso de autos, el tribunal de instancia validó el emplazamiento diligenciado en la persona jurídica de Yuyo, a través de su presidente, el señor González Rodríguez, luego de determinar que dicha corporación había actuado en calidad de representante en Puerto Rico de las demandadas peticionarias. Al así resolver, señaló lo siguiente:

> Si lo verdaderamente decisivo para determinar si se es agente de otra persona o entidad con autoridad para recibir emplazamientos en su nombre lo es la relación entre las partes, con vista a los actos efectivamente ejecutados no empece como las partes denominen tal relación, cf. *United F.M. Company Inc.* v. *Tribunal Superior,* 96 DPR 362, (1968) no debe haber duda de que tenía tal autoridad para recibir emplazamientos, cual lo hizo en ocasión anterior a la presente.[7] Resolución, pág. 8.

---

[7] El foro de instancia también utilizó los casos de *Scalise v. Beech Aircraft Corporation,* 276 F. Supp. 58 (Pa. 1967), y *Leach Company v. General Sani-Can Manufacturing Corp.,* 393 F.2d 183 (7mo Cir. 1968), para fundamentar su sentencia. Ambos son claramente distinguibles de la situación de autos.

En *Scalise v. Beech Aircraft Corporation,* supra, el tribunal sostuvo la validez de un emplazamiento contra un fabricante efectuado en la persona de su distribuidor debido al "extenso control y supervisión" que sobre éste efectuaba el fabricante. El fabricante ejercía un control prácticamente absoluto de las operaciones de la corporación que distribuía sus productos:

"It is evident upon an examination of the record that Beech controlled Atlantic Philadelphia's sales and service policies, facilities, public relations, accounts and records, and marketing practices. In fact, its influence was exerted over every important matter concerning the sale of Beechcraft by Atlantic Philadelphia." *Scalise v. Beech Aircraft Corporation,* supra, pág. 65.

Pasemos ahora a examinar si bajo la situación de hechos en el presente caso se puede considerar a Yuyo o al señor González Rodríguez como el agente de las peticionarias A.M.C. y Jeep con autoridad para recibir el emplazamiento a nombre de éstas. Regla 4.4(e) de Procedimiento Civil, *supra.*

En *United F.M. Co., Inc. v. Tribunal Superior,* 96 D.P.R. 362 (1968), se nos planteó una situación similar a la presentada en el caso de autos.[8] Allí tuvimos que resolver si la United Fireworks Manufacturing Company, Inc. (United F.M.), "una corporación extranjera", fue debidamente emplazada mediante la entrega de copia de la demanda y del emplazamiento al Sr. Néstor Piovanetti como supuesto "agente" de United F.M. en Puerto Rico, de acuerdo con lo dispuesto en la Regla 4.4(e) de Procedimiento Civil, *supra.* Esta regla establece el procedimiento para diligenciar personalmente copia de la demanda y el emplazamiento cuando se

---

En *Leach Company v. General Sani-Can Manufacturing Corp.,* supra, el emplazamiento contra todos los demandados fue diligenciado en la persona del señor Guiffrida, quien era a la vez codemandado y presidente de Sani-Can Midwest Co., también codemandada. General Sani-Can solicitó la desestimación del pleito en su contra alegando, entre otras cosas, falta de jurisdicción sobre su persona debido a que era una corporación foránea. El tribunal denegó la desestimación y, debido a la incomparecencia de General Sani-Can, dictó sentencia en rebeldía en su contra. En apelación se sostuvo el dictamen de instancia señalando que el tribunal actuó correctamente al considerar a Midwest, para efectos de jurisdicción, emplazamiento y competencia, como si fuese la misma corporación, General Sani-Can. A estos efectos se dijo lo siguiente:

". . . Appellant and Midwest did not observe even the form of corporate separation. Vincent Guiffrida was continued as an insured employee under appellant's group life and hospitalization insurance programs. He was permitted to take a company car with him to Chicago, and appellant maintained insurance on the car. Appellant shipped large quantities of merchandise to Midwest and extended liberal credit to it in disregard of the credit policy applied to its other distributors. Midwest paid appellant when convenient and always owed appellant $15,000–20,000. Appellant did not sign a distributorship agreement with Midwest, although it executed such agreements with its other distributors. Appellant referred prospective distributors to Midwest for 'action' and referred to Vincent Guiffrida and Midwest as 'our Chicago representative.'

"Each of these facts, taken singly, might not have justified the district court in disregarding the corporate separateness of appellant and Midwest. However, taken together they indicate that appellant and Midwest freely disregarded their separateness and compel the conclusion reached by the district court 'that the corporate form of Vincent's Midwest operation was the sheerest of shells to cloak his real agency for General Sani-Can.' The rulings of the district court were not clearly erroneuos." *Leach Company v. General Sani-Can Manufacturing Corp.,* supra, pág. 186.

(8) Aunque este caso fue resuelto al amparo de las anteriores Reglas de Procedimiento Civil, la norma allí establecida es de entera aplicación a las actuales reglas.

trata de una corporación u otra persona jurídica. Luego de descartar que el señor Piovanetti fuera un funcionario u oficial de la corporación United F.M. o un agente autorizado por nombramiento o designado por ley para recibir emplazamientos a nombre de la misma, pasamos a determinar si éste era un gerente administrativo o agente general de la mencionada corporación. En cuanto a la distinción entre la figura del gerente administrativo y la del agente general, expresamos, al citar de *Schwartz v. Tribl. de Distrito*, supra, lo siguiente:

"Un agente general es distinto a un agente administrativo ('managing agent') y, en cuanto a este último, los requisitos son más estrictos, pero un diligenciamiento válido puede efectuarse sobre cualquiera de esas dos clases de agente. . . . [T]ambién se establece la diferencia entre un agente administrativo y uno general ya que el primero controla, dirige o supervisa un negocio corporativo y el segundo tiene un *status* más generalmente representativo. Un agente general es aquel que está autorizado a conducir una serie de transacciones que envuelvan una continuidad de servicios . . . . El agente general es aquel que disfruta de poderes amplios y generales . . . *o que tenga autoridad para efectuar todos los negocios de su patrono de una clase particular o en un sitio particular, y que esté autorizado a actuar en representación de su patrono en todas aquellas cuestiones que estén incluidas dentro del curso o carácter ordinario del negocio de su patrono . . . . No es necesario que la autoridad del agente se extienda sobre la totalidad del negocio del patrono . . . ni es necesario que sea un funcionario de la corpora*ción." (Citas omitidas y énfasis suplido.) *United F.M. Co., Inc. v. Tribunal Superior,* supra, págs. 368–369.

Una vez concluido este análisis y vistos los hechos del caso, resolvimos que el señor Piovanetti tampoco era "agente" o gerente administrativo o agente general de United F.M. En cuanto al hecho de la existencia de una carta en la que United F.M. mencionaba como su agente a Dumont Sales Agency, entidad bajo cuyo nombre hacía negocios el señor Piovanetti, señalamos que la misma no era "decisiva en la determinación de si Dumont era un agente [de United F.M.] con autoridad suficiente para recibir emplazamientos en su nombre". *United F.M. Co., Inc. v. Tribunal Superior,* supra, pág. 369. Al así resolver, señalamos que "[l]o

verdaderamente decisivo es la naturaleza de las relaciones entre las partes" (íd.) y no lo que diga un documento.

En el presente caso, A.M.C. y Jeep han mercadeado sus productos en Puerto Rico desde antes de 1968, vehículos marca "Jeep", piezas y accesorios para éstos. Originalmente lo hacían a través de un distribuidor general, pero en un momento dado optaron por utilizar el sistema de traficantes regionales. Debido a una reducción en ventas, en 1975 decidieron volver al sistema original de distribuidor general. En ese año A.M.P.A.C., una subsidiaria de A.M.C., nombró a Yuyo distribuidor general, no exclusivo, de los productos "Jeep" en la isla. Yuyo firmó el contrato de distribución propuesto por A.M.P.A.C., pero éste no fue perfeccionado. De acuerdo con lo declarado por el señor González Rodríguez, se consideró que la concesión de la distribución a Yuyo podía presentar problemas de monopolio. Dada esta situación, las partes acordaron que el señor González Rodríguez organizaría una corporación separada que se encargaría de la distribución de los productos. Éste organizó la corporación J.P.R., entidad con la cual se perfeccionó el contrato de distribución antes propuesto a Yuyo. J.P.R. se creó como una corporación independiente totalmente poseída por el señor González, quien era a la vez su presidente.

■ El señor González Rodríguez no era empleado, funcionario u oficial de las demandadas, ni había contratado con ellas en su capacidad personal. No podía, pues, considerársele como "agente" o gerente administrativo o agente general de A.M.C., Jeep o A.M.P.A.C. para propósitos de recibir emplazamientos. *United F.M. Co., Inc. v. Tribunal Superior,* supra; *Schwartz v. Tribl. de Distrito,* supra. Además, ni el señor González Rodríguez ni Yuyo o J.P.R. habían sido nombrados agentes con autoridad para recibir emplazamientos a nombre de A.M.C., Jeep o A.M.P.A.C., ni habían sido designados por ley para tal asunto.(9) Los hechos también

---

(9) El hecho de que la representación legal de la parte demandante le haya cursado una carta a Yuyo en la que señaló que ésta "ha sido incluid[a] como distribuidor y representante" de las demandadas peticionarias, razón por la cual "se le entregan también las demandas contra estas corporaciones", no tiene el efecto de convertir a Yuyo en agente

reflejan que las demandadas peticionarias no ejercían un "extenso control y supervisión" sobre las actividades de J.P.R. o Yuyo. Siempre se mantuvo una genuina separación corporativa entre estas entidades. *Cf. Scalise v. Beech Aircraft Corporation*, supra; *Leach Company v. General Sani-Can Manufacturing Corp.*, supra. Las demandadas peticionarias no podían ser emplazadas mediante la utilización de la Regla 4.4(e) de Procedimiento Civil, *supra*.[10]

## IV

*Los conceptos "hacer negocios" y "transacciones de negocio"— La Regla 4.7 de Procedimiento Civil y el Art. 1401 de la Ley de Corporaciones*

■ El estado puede imponer requisitos que deben cumplir las corporaciones foráneas que interesan ser admitidas a hacer negocios en el mismo. El propósito de estos requisitos o condiciones, de cuyo cumplimiento depende el que puedan "hacer negocios" en dicha jurisdicción, es colocar a las corporaciones foráneas en la misma posición en que se encuentran las corporaciones domésticas. De este modo estarán sujetas a ser inspeccionadas de forma tal que se conozcan las condiciones bajo las cuales operan.

---

o representante de American Motors Corporation, Jeep o American Motors Pan American Corp. con capacidad para recibir emplazamientos. *United F.M. Co., Inc. v. Tribunal Superior*, 96 D.P.R. 362 (1968).

(10) Además de todo lo expuesto, abona a esta conclusión el hecho de que para la fecha en que se efectuó el emplazamiento en la persona del señor González Rodríguez, las peticionarias habían decidido terminar el contrato de distribución con J.P.R. para otorgarle la distribución exclusiva de sus productos a otro traficante (*dealer*) de vehículos en Puerto Rico. Esto tuvo el efecto de que las relaciones entre J.P.R. y las demandadas peticionarias degeneraran hasta el punto de convertirse en adversarios.

Esto, de por sí, sería suficiente para arrojar dudas en cuanto a si el señor González Rodríguez hizo llegar o no a las peticionarias la copia de la demanda y los emplazamientos dirigidos a éstas, entregados al señor González. El hecho de que en ocasiones anteriores hayan notificado a las peticionarias de acciones en su contra no es indicativo de que en el caso de autos lo hayan hecho. Véase en este sentido el caso de *Goetz v. Interlake S.S. Co.*, 47 F.2d 753, 757 (1931), donde se señaló que cuando se trate de una persona que no ha sido designada como agente con autorización para recibir emplazamientos, el hecho de que ésta haya podido notificar a la corporación del diligenciamiento de un emplazamiento es irrelevante. En este caso, al así concluir, el tribunal expresó lo siguiente:

". . . On another occasion he might not have done so. Another and less careful man might have thrown the summons away."

El estado puede, además, proveer a sus residentes mecanismos relativamente sencillos para emplazar a dichas corporaciones foráneas. *Fletcher Cyc. Corp.* Sec. 8446 (Perm. Ed.).

■ La autoridad del estado para imponer estas condiciones a las corporaciones que pretenden hacer negocios en su jurisdicción estriba en el poder de razón de estado (*police power*) ínsito a todo sistema de gobierno. El nuestro no es la excepción. La única limitación que tendría un estado, dentro del esquema jurídico-político vigente, es que las condiciones impuestas no pueden contravenir las disposiciones de su propia Constitución o de la Constitución de Estados Unidos.

Alegan las codemandadas peticionarias que erró el tribunal de instancia al equiparar el concepto de "hacer negocios" de la Ley General de Corporaciones, 14 L.P.R.A. sec. 2401, con el de "transacciones de negocio" que establece la Regla 4.7(a)(1) de Procedimiento Civil, 32 L.P.R.A. Ap. III.[11] Veamos.

■ Aquellas corporaciones foráneas que se encuentran "haciendo negocios" en nuestro foro, según dicho término se utiliza en el Art. 1401 de la Ley General de Corporaciones, 14 L.P.R.A. sec. 2401, deben nombrar en la isla un agente autorizado para recibir emplazamientos. Si no tienen tal agente, la entrega o notificación

---

[11] En lo pertinente, estas disposiciones señalan lo siguiente:

Art. 1401 de la Ley General de Corporaciones, 14 L.P.R.A. sec. 2401 (requisitos para hacer negocios en Puerto Rico; procedimiento):

"(a) Ninguna corporación organizada con arreglo a las leyes de cualquier país extranjero, o de cualquier jurisdicción o estado de los Estados Unidos . . . podrá hacer negocios en el Estado Libre Asociado . . . o mediante agentes o representantes destacados en éste, hasta que radique en las oficinas del Departamento de Estado del Estado Libre Asociado una copia certificada de su carta constitutiva o certificado de incorporación, más el nombre o los nombres de su agente o sus agentes autorizados en el Estado Libre Asociado, junto con una declaración jurada que haga constar el activo y el pasivo de la corporación. . . ."

Regla 4.7(a)(1) de Procedimiento Civil, 32 L.P.R.A. Ap. III:

"*Emplazamiento a un no domiciliado.*

"(a) Cuando la persona a ser emplazada no tuviere su domicilio en Puerto Rico, el Tribunal General de Justicia de Puerto Rico tendrá jurisdicción personal sobre dicha persona, como si se tratare de un domiciliado del Estado Libre Asociado de Puerto Rico, si el pleito o reclamación surgiere como resultado de dicha persona:

"(1) Haber efectuado por sí o por su agente, transacciones de negocio dentro de Puerto Rico . . . ."

del emplazamiento podrá hacerse al Secretario de Estado o a un funcionario designado por éste a tales fines. 14 L.P.R.A. sec. 2404.

■ De otra parte, las corporaciones no domiciliadas que a tenor con la Regla 4.7(a)(1) de Procedimiento Civil, *supra,* hayan "efectuado por sí o por su agente transacciones de negocios en Puerto Rico", serán emplazadas de acuerdo con los preceptos de la citada Regla 4.5 de Procedimiento Civil.

■ Con relación al término "hacer negocios", hemos expresado lo siguiente:

> No existe una regla inflexible para determinar qué se entiende por la frase *"haciendo negocios"* a los efectos de poder considerar la corporación extranjera como presente en la jurisdicción y sujeta a ser emplazada por medio de sus agentes. Cada caso debe resolverse por sus propios méritos. *Pueblo v. South P.R. Sugar Co.,* 56 D.P.R. 661, 665 (1940).

■ Cabe señalar que existen varias situaciones en las que se utiliza el término "hacer negocios" o "efectuar transacciones de negocio" con relación a las actividades de las corporaciones foráneas en nuestra jurisdicción. La determinación de qué actividad constituye "hacer negocios" o "efectuar transacciones de negocio" es una de grados. Las tres (3) situaciones más frecuentes y relevantes en que el legislador ha utilizado estos términos son: (a) aquella actividad requerida para someter a una corporación foránea a las penalidades dispuestas para quienes no hayan obtenido la autorización requerida por la Ley General de Corporaciones, 14 L.P.R.A. sec. 1101 *et seq.*; (b) la actividad requerida para someter a una corporación foránea a nuestras leyes contributivas, 13 L.P.R.A. sec. 466,[12] y (c) la actividad requerida para que se pueda emplazar y someter a una corporación foránea a la jurisdicción de nuestros tribunales, Reglas 4.5 y 4.7(a)(1) de Procedimiento Civil, *supra.* Debido al propósito que se persigue, el grado de actividad requerida para someter a una corporación foránea al cumplimiento de las disposiciones de la Ley General de

---

[12] Esta sección, al igual que otras de la ley de contribuciones relativas a la imposición de contribuciones a corporaciones foráneas, utiliza el término "transacción de negocios".

Corporaciones debe ser mayor que si se tratara de meramente imponerle nuestras leyes contributivas. La actividad debe ser aun menor cuando el propósito es el de someter dicha corporación a la jurisdicción de nuestros tribunales.[13] Isaacs, *An Analysis of Doing Business*, Col. L. Rev. 1018 (1925).

▇ Con relación al concepto "hacer negocios", hay que tener presente que el propósito de las disposiciones de los Arts. 1401 a 1408 de la Ley General de Corporaciones, 14 L.P.R.A. secs. 2401 a 2408, es reglamentar las corporaciones foráneas y extranjeras que a través de agentes o representantes destacados en Puerto Rico hagan negocios en la isla. A estas corporaciones foráneas se les exige, entre otras cosas, llevar y conservar en Puerto Rico los libros de contabilidad, antecedentes, documentos y circunstancias que acrediten la forma en que están realizando sus operaciones. A estas personas jurídicas se les considera que están dentro del área territorial de Puerto Rico.

En el caso de autos, al momento de realizarse el emplazamiento objeto de esta controversia, J.P.R. tenía un contrato con A.M.P.A.C. para la distribución en Puerto Rico de los productos marca "Jeep". J.P.R., aunque sujeta a cierto grado de control y supervisión por parte de A.M.P.A.C. para garantizar la calidad del producto y su óptima distribución en la isla, operaba como una corporación doméstica independiente, fomentando sus propios intereses de negocios. Como cuestión de hecho, ya para esa época las relaciones entre A.M.P.A.C. y J.P.R. se habían deteriorado (podrían considerarse antagónicas). Cabe señalar, además, que

---

(13) Cónsono con lo antes señalado y con relación al concepto "efectuar transacciones de negocio" de nuestras Reglas de Procedimiento Civil, debemos tener presente tres (3) normas básicas a las cuales, como regla general, hay que acudir para determinar la existencia de jurisdicción *in personam* sobre un no residente: (1) que el demandado no residente realice algún acto o efectúe alguna transacción dentro del foro (dicho acto o transacción no tiene que efectuarse físicamente dentro del foro y basta que sea un solo acto o transacción, si sus efectos son suficientemente sustanciales como para establecer un contacto mínimo); (2) que la causa de acción surja o resulte de las actividades del demandado dentro del foro y, si surge fuera de éste, el demandado debe realizar actividades que tiendan a mantener un "contacto mínimo sustancial" de éste con el foro, y (3) *una vez establecido el contacto mínimo entre el demandado y el foro, la asunción de jurisdicción a base de ese contacto "debe ser compatible con los principios de 'trato imparcial' y 'justicia sustancial' del debido procedimiento de ley".*

A.M.P.A.C. no la había designado su agente o representante para propósito de las disposiciones de la Ley General de Corporaciones ni la había autorizado para recibir emplazamientos a su nombre.

■ Una corporación doméstica independiente que tenga un contrato de distribución, represente un producto en la isla y opere para fomentar sus intereses de negocios no se constituye, como regla general, por el hecho de que el suplidor tenga cierto grado de control y supervisión sobre ella para asegurar se mantenga la calidad del producto y se logre un mercado adecuado, en el agente o representante de la corporación foránea suplidora del producto para propósitos de la Ley General de Corporaciones. Tampoco esto la convierte en "agente", "gerente administrativo" o "agente general" de su suplidora para propósitos de la Regla 4.4(e) de Procedimiento Civil, *supra. Schwartz v. Tribl. de Distrito,* supra.

Erró el tribunal de instancia al equiparar el concepto "hacer negocios" de la Ley General de Corporaciones con el de "efectuar transacciones de negocio" de la Regla 4.7(a)(1) de Procedimiento Civil, *supra,* y al determinar que las corporaciones foráneas peticionarias podían ser emplazadas mediante el mecanismo provisto en la citada Regla 4.4(e).

Por todo lo antes expuesto, *se dictará sentencia mediante la cual se revoca la resolución emitida por el tribunal de instancia el 25 de noviembre de 1986, se concede el relevo de sentencia solicitado y se devuelve el caso al tribunal de instancia para que continúen los procedimientos de forma compatible con esta opinión.*