**AMERICAN EXPRESS INTERNATIONAL, INC., Plaintiff, Appellant,**

v.

**Victor MENDEZ–CAPELLAN, etc., et al., Defendants, Appellees.**

**No. 88–1568.**

United States Court of Appeals, First Circuit.

Heard May 4, 1989.

Decided Nov. 17, 1989.

A.J. Bennazar–Zequeira with whom Alberto De Diego and Gonzalez, Bennazar & Colorado, were on brief for plaintiff, appellant.

Pedro Jimenez, New York City, with whom Wallace Gonzalez Oliver and Jorge R. Jimenez, Hato Rey, P.R., were on brief for defendants, appellees.

Before BOWNES and TORRUELLA, Circuit Judges, and RE,* Chief Judge.

* The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

RE, Chief Judge:

In this diversity action, American Express International, Inc., (AMEX), sued Victor Méndez Capellán and Vimenca Travel Agency, (collectively, Vimenca) in the United States District Court for the District of Puerto Rico, contending that Vimenca breached its contractual and fiduciary duties as AMEX's paying agent in the Dominican Republic. AMEX appeals from the judgment of the district court which granted Vimenca's motion to dismiss for lack of *in personam* jurisdiction.

The question presented on this appeal is whether the district court erred in dismissing the case for lack of *in personam* jurisdiction based on its finding that Vimenca did not have sufficient contacts with the forum to justify subjecting it to jurisdiction and trial in Puerto Rico.

On the facts of record, not seriously in dispute, we hold that Vimenca's contacts with the forum are too minimal and attenuated to confer jurisdiction upon the district court of Puerto Rico. Accordingly, the judgment of the district court is affirmed.

## BACKGROUND

AMEX, a Delaware corporation with its principal offices in New York, conducts business throughout the world. Defendant Victor Méndez Capellán (Capellán), a Dominican citizen, is president of Vimenca Travel Agency, a corporation organized under the laws of the Dominican Republic. Vimenca is not licensed to do business in Puerto Rico.

The business relationship between Vimenca and AMEX commenced in 1961, and involved several successive contracts. In 1978, the parties entered into an "American Express Worldwide Representative Agreement," called the "master agreement." According to AMEX, the master agreement "confers upon [Vimenca] a series of specific functions to be carried out as Amex representative in the Dominican Republic, including, but not limited to, cardmember sales development, service establishment servicing, *paying agent*, service establishment solicitation, card authorization services, representative tour operations, traveler's cheques sales, and others." (emphasis added). The master agreement was supplemented by specific agreements for the various functions to be carried out by Vimenca.

As paying agent, Vimenca's role was to serve as plaintiff's paying representative for Dominican commercial establishments that received payment for their goods or services by American Express cards. For a fixed annual stipend, Vimenca would receive funds from AMEX to pay the commercial establishments. Pursuant to the master agreement and supplementary contracts, Vimenca could make these payments in either American or Dominican currency.

In the early 1980's, the Dominican peso began to decline in value with respect to the United States dollar. Consequently, the Dominican government enacted certain laws to control the flow of currency exchange. AMEX responded by instructing Vimenca "to take the necessary measures so that Amex cardmembers would enjoy the best possible exchange rate available in the free market, within the legal mechanisms established by the Dominican Government." AMEX, however, contends that Vimenca "began to make a profit on foreign exchange transactions, ... denying [AMEX] Cardmembers ... the best possible exchange rates legally available at the time in the Dominican Republic[,]" thus keeping the surplus for itself. AMEX also contends that, after it objected to Vimenca's actions, Vimenca "reacted by lobbying with ... Dominican authorities to obtain administrative interpretations to the [Dominican] exchange laws that allowed defendants to continue improperly obtaining a [profit] in their foreign exchange transactions...." AMEX further charged that when it terminated Vimenca's status as paying agent, Vimenca "unleash[ed] a virulent harassment and defamation crusade, to ... besmirch the reputation of A[MEX] in the Dominican Republic through a na-

tional newspaper and publicity campaign...."

AMEX sued in the District Court for the District of Puerto Rico, seeking a declaratory judgment justifying termination of the "master agreement," and $8,250,000 in damages for breach of contract, breach of fiduciary duties, injury to business reputation, and tortious interference with business relations.

Vimenca moved to dismiss for improper service of process under Rule 12(b)(5), lack of *in personam* jurisdiction under Rule 12(b)(2), and, in a supplementary motion, for forum *non conveniens*. AMEX opposed the motion to dismiss, and, pursuant to Rule 56(f), moved for leave to take the deposition of codefendant Capellán on the issue of *in personam* jurisdiction. Subsequently, at a status conference, the "[p]arties agreed that [AMEX] will not take the deposition of ... Capellán on the issue of *in personam* jurisdiction pending plaintiff's substantiation of jurisdiction and the need to take said deposition."

It is undisputed that Vimenca has no office or employees in Puerto Rico. Neither does Vimenca have a telephone listing in Puerto Rico. According to Capellán, neither he nor his travel agency has "ever operated, conducted, engaged in or carried on any business or business venture in Puerto Rico," and "[a]ny and all services ... to be performed by [Vimenca] or [AMEX] under the terms of the agreements ... were to be performed exclusively within the Dominican Republic."

AMEX, through the affidavits of three of its Florida employees, asserts that Vimenca has at least two bank accounts in Puerto Rico, and that Vimenca has used one of these accounts to pay obligations owed to AMEX. It also asserts that another Puerto Rico account was used by Vimenca "as the key credit reference for the issuance of an American Express 'Company Card' to ... Capellán...." AMEX stresses that, prior to 1984, when AMEX had a regional office in Puerto Rico, Vimenca had "frequent and regular" contacts with the Puerto Rico office, including sending employees to Puerto Rico for AMEX training sessions.

After receiving affidavits from both AMEX and Vimenca on the issue of *in personam* jurisdiction, the district court converted the motion into one for summary judgment.

The district court acknowledged that, on summary judgment, the court "must examine the record in the light most favorable to the party opposing the motion[,] [AMEX.]" *American Express v. Méndez Capellán*, No. 87–601, slip op. at 8 (D.P.R. Mar. 21, 1988) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The district court stated that its "jurisdiction over [Vimenca] is governed by the forum's long-arm statute," and discussed Puerto Rico's long-arm statute, set forth in Rule 4.7 of the Puerto Rico Rules of Civil Procedure. *See id.* at 9–10. The district court concluded that a non-resident defendant is subject to the jurisdiction of Puerto Rico, under the long-arm statute, if the defendant performs an act in Puerto Rico, if the cause of action arises out of that act, and if the defendant's contacts with Puerto Rico are sufficient to meet the constitutional requirements of due process. *Id.* at 10 (citing *Arthur H. Thomas Co. v. Superior Court*, 89 P.R.R. 864, 870 (1970)).

After listing Vimenca's "limited" contacts with Puerto Rico, the court found that these contacts "do not arise from the causes of action." *Id.* at 13. The court found that the past training of Vimenca employees at AMEX's Puerto Rico office "does not enrich the nature of the contact with the forum." *Id.* As for Vimenca's bank accounts in Puerto Rico, the court noted that "[t]hese ... accounts have no substantial nexus with the causes of action...." *Id.* at 17. The court observed that "[a]ll of AMEX'[s] injuries occurred in the Dominican Republic, [and] ... [a]ll significant contacts between the parties also arise in the Dominican Republic." *Id.*

In sum, the district court held that the causes of action did not arise out of AMEX's meager contacts in Puerto Rico, and that, in any event, they were insufficient to satisfy the constitutional requirements of due process. Accordingly, the district court granted Vimenca's motion to dismiss.

## STANDARD OF REVIEW

The district court converted Vimenca's Rule 12(b)(2) motion to dismiss for lack of *in personam* jurisdiction to a motion for summary judgment. The Rules provide that a Rule 12(b)(6) motion "to dismiss for failure of the pleading to state a claim upon which relief can be granted ... shall be treated as one for summary judgment" if "matters outside the pleading are presented to and not excluded by the court...." Fed.R.Civ.P. 12(b). Rule 12(b), however, has no similar provision for motions to dismiss for lack of jurisdiction. Nonetheless, it has been noted that "[i]t is not important whether the objection is called a motion to dismiss or one for summary judgment. Since the same relief is sought, the difference in name is unimportant. In any event, the affidavits presented are available on either motion." *Central Mexico Light & Power Co. v. Munch*, 116 F.2d 85, 87 (2d Cir.1940). In addition, we note that AMEX did not object to the court's decision to treat Vimenca's motion to dismiss as one for summary judgment.

As we have stated, "[t]he burden of proving the facts necessary to sustain jurisdiction is on the plaintiff." *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 904 (1st Cir.1980) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). It is also fundamental that, on a motion to dismiss for lack of *in personam* jurisdiction, a plaintiff must establish a *prima facie* case that the defendant is subject to the jurisdiction of the forum. *See Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir.1982).

## DISCUSSION

Since the overruling of *Swift v. Tyson*, 41 U.S. (16 Pet.) 1, 10 L.Ed. 865 (1842), by *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), federal courts sitting in cases based on diversity of citizenship "are for common-law purposes courts of the state in which they sit...." R. Leflar, L. McDougal, & R. Felix, *American Conflicts Law* 194 (4th ed. 1986) (hereinafter *American Conflicts Law*). Thus,

in diversity cases, a federal court cannot exceed the jurisdictional reach of the courts of the forum in which they sit. *See Rambo v. American S. Ins. Co.*, 839 F.2d 1415, 1416 (10th Cir.1988). More specifically, "[i]n a diversity case, ... the district court's personal jurisdiction over a non-resident defendant is governed by the forum's long-arm statute." *Mangual v. General Battery Corp.*, 710 F.2d 15, 18 (1st Cir. 1983).

■ Rule 4.7 of the Puerto Rico Rules of Civil Procedure, the Commonwealth's long-arm statute, provides, in pertinent part, that:

(a) Whenever the person to be served is not domiciled in Puerto Rico, the General Court of Justice shall take jurisdiction over said person if the action or claim arises because said person:

(1) Transacted business in Puerto Rico personally or through an agent; or

(2) Participated in tortious acts within Puerto Rico personally or through his agent....

P.R.Laws Ann. App. III, Rule 4.7(a)(1), (2) (1979).

This court has stated that "Puerto Rico's 'long-arm' rule permits the exercise of jurisdiction to the full extent of constitutional authority." *Vencedor Mfg. Co. v. Gougler Indus., Inc.*, 557 F.2d 886, 889 (1st Cir. 1977) (citing *Arthur H. Thomas Co. v. Superior Court*, 98 P.R.R. 864, 870–71 n. 5 (1970)); *see also Mangual*, 710 F.2d at 19. Before confronting the constitutional limitations, however, it is necessary to determine whether AMEX's claim satisfies Puerto Rico's long-arm statute. Hence, in order to establish *in personam* jurisdiction over Vimenca, pursuant to Puerto Rico's long-arm statute, AMEX must make a *prima facie* showing that its "claim arises because [Vimenca] ... [t]ransacted business in Puerto Rico personally or through an agent; or ... [p]articipated in tortious acts within Puerto Rico personally or through his agent...." *See* P.R.Laws Ann. App. III, Rule 4.7(a)(1), (2) (1979).

The district court examined all the causes of action under Rule 4.7(a)(1), the

transaction of business analysis, because "[a]lthough the causes of action for tortious interference with plaintiff's business activities and damage to plaintiff's reputation are sounding in tort, they encompass acts which arise out of an obligation under a business relationship." *American Express*, No. 87–601, slip op. at 9 n. 3. AMEX, however, in its brief, cites and relies upon both provisions of the long-arm statute. Hence, both provisions will be examined to determine whether *in personam* jurisdiction over Vimenca is authorized by the law of Puerto Rico.

Vimenca's sole contacts with Puerto Rico are two bank accounts in Puerto Rico, and dealings with AMEX's former Puerto Rico office, including the training of Vimenca employees there. AMEX argues that, because Vimenca used these bank accounts to satisfy obligations owed to AMEX, and, prior to 1984, Vimenca was in "frequent and regular" contact with AMEX's Puerto Rico office, its claims concerning Vimenca's duty as its paying agent arose from these contacts within the meaning of the long-arm statute. We do not agree. Although Vimenca's contacts with Puerto Rico are related to Vimenca's general contractual relationships with AMEX, the affidavits of Capellán show clearly that AMEX's causes of action do not arise from these contacts.

The contracts on which this lawsuit is based were executed in the Dominican Republic, and Vimenca's main contacts with AMEX were with AMEX offices outside of Puerto Rico. Capellán maintains that "[n]o negotiations relating to [the currency exchange] dispute were ever held in Puerto Rico or with representatives of [AMEX]'s Puerto Rico office." Capellán has also denied that his Puerto Rico bank accounts were used to satisfy debts owed to AMEX. Furthermore, the mere deposit of funds in a bank account in Puerto Rico is insufficient to confer *in personam* jurisdiction over Vimenca.

In its brief and supporting affidavits, AMEX emphasizes the international nature of its business activities. AMEX's activities or contacts, however, are not to be confused with the contacts of Vimenca with the forum in determining whether they are sufficient to exercise *in personam* jurisdiction over Vimenca. On the basis of affidavits supplied by both parties, we conclude that AMEX has failed to show that the causes of action arise from Vimenca's contacts with Puerto Rico, within the meaning of Rule 4.7(a)(1) of the Puerto Rico Rules of Civil Procedure.

AMEX also has not shown that Vimenca "[p]articipated in tortious acts within Puerto Rico personally or through his agent" within the meaning of Rule 4.7(a)(2). Any alleged lobbying of Dominican officials by Vimenca occurred in the Dominican Republic. Similarly, AMEX admits in its complaint that Vimenca's "virulent harassment and defamation crusade" occurred entirely within the Dominican Republic. In its brief, AMEX argues that Vimenca transferred illicit funds received from its relationship with AMEX to accounts in Puerto Rico, thereby "consummat[ing] the illegal transaction." Taken as a whole, however, the affidavits fail to support AMEX's assertions of contacts by Vimenca sufficient to confer *in personam* jurisdiction. Since there is no *in personam* jurisdiction, we need not address the question of *forum non conveniens. See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504, 67 S.Ct. 839, 841, 91 L.Ed. 1055 (1947) ("[t]he doctrine of *forum non conveniens* can never apply if there is absence of jurisdiction. . . ."); *see generally*, E. Scoles & P. Hay, *Conflict of Laws* 363 (1982).

■ Even if we were to assume that AMEX's claim arose from Vimenca's contacts in Puerto Rico, it is clear that, for purposes of the long-arm statute, the assertion of *in personam* jurisdiction over Vimenca by the District Court for the District of Puerto Rico, would be unconstitutional. The seminal case of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) has set the constitutional limits for the exercise of *in personam* jurisdiction over a defendant foreign corporation. Prior to *International Shoe*, foreign corporations were subject to *in personam* jurisdiction in a forum if they were "doing business" within the forum.

See American Conflicts Law at 40. In sustaining the jurisdiction of the state of Washington in International Shoe, the Supreme Court made it clear that the service of process in that case was adequately designed to give the defendant actual notice and a fair opportunity to respond and defend the suit. See International Shoe, 326 U.S. at 320, 66 S.Ct. at 160. The only jurisdictional question presented, therefore, was whether the state could constitutionally exercise jurisdiction over the foreign defendant. See id. at 311, 66 S.Ct. at 156.

In International Shoe, the defendant was not within the territory of the forum, and its activities were insufficient to constitute "doing business" in the state of Washington. Consequently, the Court stated that the question presented was whether the defendant had "certain minimum contacts with [the forum state] that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Id. at 316, 66 S.Ct. at 158 (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). In language oft-quoted and relied upon in subsequent cases, the Court stated that the foreign defendant's activities, though not constituting "doing business," must, nonetheless, "establish sufficient contacts or ties with the state of the forum to make it reasonable and just, according to our traditional conception of fair play and substantial justice, to permit the state to enforce the obligations which appellant [defendant] has incurred there." Id. 326 U.S. at 320, 66 S.Ct. at 160.

Not long thereafter, the Supreme Court held that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum ...," thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). According to the Restatement, a defendant foreign corporation is subject to a state's jurisdiction "with respect to causes of action that do not arise from the business done in the state if this business is so continuous and substantial as to make it reasonable for the state to

exercise jurisdiction." Restatement (Second) of Conflicts of Law § 47(2) (1971).

In Helicopteros Nacionales v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1983), the Supreme Court reviewed the exercise of in personam jurisdiction over a defendant foreign corporation by the Texas state courts. The defendant corporation's only contacts with Texas consisted of contract negotiations within the state, accepting checks drawn on a Texas bank, purchasing materials and services from a corporation located in Texas, and sending employees to Texas for training. See id. at 416, 104 S.Ct. at 1873. The Supreme Court held that the defendant's contacts, which were unrelated to the cause of action, "were insufficient to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment." Id. at 418–19, 104 S.Ct. at 1874.

In this case, Vimenca's contacts with Puerto Rico are even fewer and less substantial than those of the non-resident defendant in Helicopteros. Vimenca conducted no contract negotiations in Puerto Rico, nor does the record reveal that Vimenca conducted any business or other activities such as the making of any purchases in Puerto Rico. Additionally, AMEX has failed to demonstrate that its allegations arise from Vimenca's contacts with Puerto Rico. Consequently, the district court in Puerto Rico cannot constitutionally assert in personam jurisdiction over Vimenca.

■ In its brief, AMEX argues that "the district court should ha[ve] deferred the decision on [the] motion to dismiss until discovery was concluded." Specifically, AMEX contends that the district court should have granted its motion for leave to depose Capellán, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. In support of this contention, AMEX relies on Surpitski v. Hughes–Keenan Corp., 362 F.2d 254, 255 (1st Cir.1966), in which this court reversed a district court decision that granted defendants' motion to dismiss on the basis of lack of in personam jurisdiction, and stated that "[a] plaintiff who is a total stranger to a corporation should not

be required, unless he has been undiligent, to try such an issue ... without the benefit of full discovery." The *Surpitski* case, however, is clearly distinguishable because AMEX is not "a total stranger to" Vimenca. Vimenca's contacts with Puerto Rico, however "limited" or meager, that are alleged by AMEX, are connected to its relationship with AMEX.

Generally, on appeal of a ruling of a district court on a motion to dismiss for lack of *in personam* jurisdiction, the district court's denial of the discovery motion "will not be grounds for reversal unless the denial was an abuse of discretion by the ... court." 2A J. Moore, J. Lucas, & G. Grotheer, *Moore's Federal Practice*, ¶ 12.07[2.–2] (2d ed. 1989). In this case, based on the long commercial relationship between AMEX and Vimenca, we cannot say that the district court abused its discretion in denying plaintiff's motion for leave to take the deposition of Capellán. Furthermore, it is to be noted that, at a status conference, the parties agreed that AMEX would not depose Capellán "pending [AMEX]'s substantiation of jurisdiction and the need to take [the] deposition."

## CONCLUSION

Since we hold that the district court has not abused its discretion in denying AMEX leave to depose Capellán, and that Vimenca is not subject to the *in personam* jurisdiction of the District Court for the District of Puerto Rico, the judgment of the district court is affirmed.