**Irving RIVERA SANCHEZ, Plaintiff,**

v.

**MARS INC. d/b/a Master Foods InterAmerica, Defendants.**

**Civil No. 98–1184 (JP).**

United States District Court, D. Puerto Rico.

Nov. 30, 1998.

Godwin Aldarondo Girald, San Juan, PR, for Plaintiff.

A.J. Bennazar–Zequeira, Hato Rey, PR, for Defendant.

## OPINION AND ORDER

PIERAS, Senior District Judge.

### I. Introduction and Background

The Court has before it Plaintiff's Position Regarding the Jurisdiction of the Court (docket No. 21) and Defendant's Response to Plaintiff's Position Regarding Jurisdiction and Motion for Summary Judgment. (**Docket No. 22.**) On July 20, 1998, the Court met with the parties for an Initial Scheduling Conference, and at this meeting, Defendant brought up the issue of the Court's subject matter jurisdiction over the instant case. Defendant disputes Plaintiff's claim that the parties are diverse, and asserts that Plaintiff and Defendant are both citizens of Puerto Rico, which would leave the Court without jurisdiction. The Court, therefore, ordered the parties to brief the issue of jurisdiction. (Docket No. 18.)

■ This case arises out of Plaintiff's claims under the Constitution of Puerto Rico for an invasion of privacy.[1] Plaintiff, Irvin Rivera Sánchez ("Rivera"), worked as a service representative for Defendant MARS Inc. and its subsidiary Master Foods International, Inc. ("Defendant"), and was assigned to service various accounts including the account of Pueblo, International ("Pueblo"). While working on the Pueblo account, Rivera entered into a romantic relationship with a female employee of Pueblo, and she later became pregnant. Rivera claims that this relationship did not place him in conflict with his business interests, and that even though some people at Pueblo knew of the romantic relationship, his business relationship with Pueblo did not suffer.

On February 28, 1997, Rivera was terminated because of his "conduct towards an employee of one of [Defendant's] most important clients." (Def.'s and Pl.'s ISC Memorandum.) Rivera asserts that there was no just cause for his termination, and that further, he had not received any warnings or disciplinary actions prior to his termination. Plaintiff claims that under the Constitution of Puerto Rico, his fundamental privacy rights were violated as his relationship with the Pueblo employee was a private matter. In addition, Rivera was fired the night of an awards ceremony in which he was to receive the Merchandiser of the Year Award by the Sales and Marketing Executives Association. Rivera claims that under Puerto Rico tort law, he suffered humiliation and embarrassment because he was not allowed to attend the ceremony, and because his failure to appear fueled speculation that he had been dismissed for theft or drug use.

In addition to Defendant's brief on the Court's jurisdiction, Defendant moves for summary judgment based on a lack of diversity jurisdiction. Defendant argues that contrary to Rivera's assertion, Plaintiff was never an employee of MARS Inc. Rather, Defendant asserts that Rivera was an employee of Master Foods Interamerica (MFI), the commercial name under which ITL International, Inc. ("ITL") does business in Puerto Rico. ITL is a wholly owned subsidiary of MARS, Inc. ("MARS"), and as stipulated by the parties, ITL/MFI has its principal place of business in Bayamón, Puerto Rico. (ISC Order at 2, docket No. 23.) The

---

1. In Puerto Rico, the right to privacy can be asserted against private individuals, and state action is not a prerequisite. *See Arroyo v. Rattan Specialties, Inc.,* 117 D.P.R. 35, 87 (1986).

parties also stipulated that MARS is a foreign corporation with its principal place of business outside of Puerto Rico. *Id.* Since Rivera is a citizen of Puerto Rico, the Court does not have jurisdiction over the instant case if he is an employee of ITL/MFI rather than MARS.

In Plaintiff's Position Regarding the Jurisdiction of the Court, Rivera contends that the Court does have jurisdiction over his case as ITL/MFI is merely an "alter ego" of MARS, and MARS is the real entity which "owns, controls, operates, and profits from the business of MFI." (Pl.'s Position Regarding the Jurisdiction of the Court at ¶ 5.) Therefore, according to Rivera, he was an employee of MARS, whose principal place of business is outside of Puerto Rico, therefore creating complete diversity of citizenship.

## II. Discussion

### A. Subject Matter Jurisdiction

■ Federal courts are courts of limited jurisdiction. U.S. Const. art. III cl. 2. Congress has provided federal district courts with original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. § 1332. The issue of subject matter jurisdiction may be raised at any time during a proceeding, either by the parties or by the Court, *sua sponte,* and at any point it becomes clear that the court lacks subject matter jurisdiction, the court must dismiss the action. *See McNutt v. General Motors Accept. Corp.,* 298 U.S. 178, 184, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Capron v. Van Noorden,* 6 U.S. (2 Cranch) 126, 127, 2 L.Ed. 229 (1804); *Chaparro–Febus v. Local 1575,* 983 F.2d 325, 329 n. 4 (P.R.1992). In considering whether the Court has jurisdiction over the subject matter of an action, the Court may consider extra-pleading material, such as affidavits and testimony. *Land v. Dollar,* 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *see, e.g., Media Duplication Services, Ltd. v. HDG Software, Inc.,* 928 F.2d 1228, 1236 (1st Cir.1991); *Rodríguez v. S K & F Co.,* 833 F.2d 8, 9 (1st Cir.1987).

■ The Court first notes that Defendant filed its motion as a motion for summary judgment rather than as a motion to dismiss for lack of subject matter jurisdiction. "When a court must dismiss a case for lack of jurisdiction, the court should not adjudicate the merits of the claim." *Stanley v. Central Intelligence Agency,* 639 F.2d 1146 (5th Cir.1981) (citing *Durham v. Mason and Dixon Lines, Inc.,* 404 F.2d 864 (6th Cir. 1968); *Guthrie v. Dow Chemical Co.,* 445 F.Supp. 311, 315 (S.D.Tex.1978)) The granting of summary judgment is a disposition based on the merits of the case; therefore, "a motion for summary judgment is not the appropriate procedure for raising the defense of lack of subject matter jurisdiction." *Id.* (citations omitted); *see also, Solomon v. Solomon,* 516 F.2d 1018, 1027 (3d Cir.1975).

■ Although Defendant raised the issue of diversity jurisdiction in a motion for summary judgment, the Court can still consider the motion, but as a motion to dismiss. *See Brodie v. KLM Royal Dutch Airlines,* No. Civ.A. 96–2682, 1996 WL 745494, *1–2 (E.D.Pa.1996) (defendant's failure to properly raise the issue of jurisdiction in a motion to dismiss pursuant to Fed.R.Civ.P. 12 does not preclude the court from examining the issue of subject matter jurisdiction as the court can examine the motion for summary judgment as a motion to dismiss); *see also Health Care Review, Inc. v. Shalala,* 926 F.Supp. 274, 280 (D.R.I.1996) (quoting *American Express International, Inc. v. Mendez–Capellan,* 889 F.2d 1175, 1178 (1st Cir.1989)) ("It is not important whether the objection is called a motion to dismiss or one for summary judgment. Since the same relief is sought, the difference in name is unimportant. In any event, the affidavits presented are available on either motion.").

### B. Defendant's Principal Place of Business in the Context of a Parent/Subsidiary Relationship

■ In ruling on Defendant's Motion, the Court must first determine the citizenship of the corporate Defendant. In making such a determination, the Court looks to the location of Defendant's principal place of business in order to decide Defendant's citizenship. In

this case, the issue involves two corporations in a parent/subsidiary relationship, where the subsidiary is alleged to be the alter ego of the parent. Before applying the traditional analysis of a corporation's principal place of business, the Court must determine which corporation's principal place of business is at issue.[2]

▮ In order to assess whether to look at the principal place of business of the parent or subsidiary, the First Circuit has "repeatedly held that, where there is no evidence that the integrity of the corporate form has been violated, the separate corporate identities of parent and subsidiary should be honored when determining either one's principal place of business." *Taber*, 987 F.2d at 61 (citations omitted). Thus, a court must focus "solely on the business activities of the corporation whose principal place of business is at issue" when there is no evidence that separate corporate identities have been ignored. *Id.* at 62–63.

▮ The Court must, therefore, analyze whether MARS and its subsidiary MFI/ITL have preserved separate corporate identities in assessing the location of Defendant's principal place of business. Even if a parent company owns all the subsidiary's stock and the "control incident to that ownership," a court is not justified in "ignoring the otherwise separate character of the two corporations." *de Walker v. Pueblo Int. Inc.*, 569 F.2d 1169, 1173 (1st Cir.1978) (quoting *Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333, 335–37, 45 S.Ct. 250, 69 L.Ed. 634 (1925)). A court must examine several factors in determining whether separate corporate identities have been preserved or ignored. Such factors include whether the subsidiary: maintained its own general ledger, corporate minutes book, and register of unissued stock; maintained its own bank accounts and executive offices; filed its own

federal and state income and unemployment taxes, social security contributions and excise taxes. *See Topp*, 814 F.2d at 837.

Plaintiff Rivera presents a wide range of evidence in the form of affidavits and documentary evidence in support of his assertion that MARS was his "real" employer or that its subsidiary MFI/ITL was MARS' alter ego. Plaintiff's evidence includes the following: (1) the fact that the documents of Defendant's computerized personnel system identify MFI as "MARS Unit 4600;" (2) the name ITL international never appeared in any document Plaintiff ever signed, read, or used during his employment; (3) Plaintiff received an employee handbook identifying MFI as a "unit" of MARS, and the handbook was described as a compilation of the "policies and procedures of MARS Incorporated;" (4) Plaintiff was made part of the MARS deferred compensation plan and health insurance plan; (5) at motivational training Plaintiff received training from MARS personnel on the "five MARS principles;" (6) Plaintiff exclusively merchandised products manufactured by MARS; (7) Plaintiff was assigned to the "northern Carribean division;" (8) the stationery Plaintiff used in his work clearly identified MFI as a "Company of MARS, Inc."; (9) it was possible for MFI employees to transfer to North America or anywhere in the world where MARS conducts operations; (10) the president and CEO of MARS, and the majority shareholders of MARS conduct week long visits to Puerto Rico to inquire into the affairs of MFI, to select and appoint managerial personnel, and to set business priorities; and (11) the General Manager of MFI is not a resident of Puerto Rico. (Pl.'s Position Regarding the Jurisdiction of the Court at 2–5.)

Defendant, on the other hand, presents evidence in support of its position that the corporations maintained separate identities

---

**2.** The First Circuit has developed "three distinct but not necessarily inconsistent" tests for determining a corporation's principal place of business:

    (1) the "nerve center" test, which searches for the location from which the corporation's activities are controlled and directed; (2) the "center of corporate activity" test, which searches for the location of the corporation's

day-to-day management; and (3) the "locus of operations of the corporation" test, which searches for the location of the corporation's actual physical operations.
*Taber Partners v. Merit Builders, Inc.*, 987 F.2d 57 (1st Cir.1993) (citing *Topp v. CompAir Inc.*, 814 F.2d 830, 834 (1st Cir.1987)). These three tests have frequently been applied in the parent/subsidiary context. *See id.*

including: (1) MFI/ITL processes its own payroll and pays its employees and payroll taxes with checks drawn on its account in a Puerto Rican bank; (2) most of MFI/ITL's employees, its General Manager, and all of its division managers work and reside in Puerto Rico; (3) MFI/ITL has its own employee motivation program and Employee information guide; (4) MFI/ITL pays its own disability worker's compensation, has its own Employer's Account Number at the U.S. Internal Revenue Service and Puerto Rico Treasury Dept., and pays the employer's contribution to its employees retirement plan and health insurance; (5) MARS, the parent company, sometimes gives conferences and meets with personnel of MFI/ITL regarding the MARS' philosophy, products, and general commercial practices; (6) MFI/ITL, not MARS's number, is listed in the Puerto Rico Telephone directory; (7) MFI/ITL is a supplier of MARS' products, but also sells the products of other companies and independent contractors not affiliated with MARS; (8) MFI develops its own market strategy, determines the sale price of its products, and performs its own customer development for Puerto Rico and the Northern South America Sales region; (9) MFI/ITL has a separate budget from MARS, and its employees are independent of MARS' employees; (10) MFI/ITL's income tax returns are prepared locally and filed independently from any tax returns filed by MARS; (11) MFI/ITL's business records are separate and apart from those of MARS, and only the records of MFI/ITL are kept in its Puerto Rico facilities; and (12) MFI and MARS have no common directors. (Def.'s Resp. to Pl.'s Position Regarding Jurisdiction and Mot.Summ.J. at 4–8; Defs.' Motion Complying with Order to Submit Statement, Statement of Carol Childs.)

In ruling on whether a court has subject-matter jurisdiction over a particular case, a court must "satisfy itself of its authority to hear the case, and in so doing, it may resolve factual disputes ... [I]t may rely upon either written or oral evidence ... [but] must, however, afford the non-moving party an ample opportunity to secure and present evidence relevant to the existence of jurisdiction." *Health Care Review, Inc.*, 926

F.Supp. at 280 (quoting *Prakash v. American University*, 727 F.2d 1174, 1179–81 (D.C.Cir.1984)). In addition, the plaintiff bears the burden of " 'proving the facts necessary to sustain jurisdiction.' " *American Express*, 889 F.2d at 1178 (quoting *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 904 (1st Cir.1980)).

The Court has allowed Plaintiff sufficient opportunity to provide evidence of the Court's jurisdiction over Defendant. Nevertheless, the Court finds that based on the evidence presented by both parties, the Court does not have jurisdiction to hear the instant case. Rivera's argument that MFI/ITL is the alter ego of MARS focuses on the fact that MARS is significantly involved in the employment policies, training, and operations of its subsidiary MFI/ITL. Plaintiff also suggests that MARS is his "real employer" merely because MFI/ITL is a "unit" of MARS. In support of his position, Rivera cites to three district court decisions from the Southern District of New York and the Middle District of Florida. Rivera, however, does not address the First Circuit decisions, discussed above, clearly holding that the parent and subsidiary are considered separate entities unless there is evidence of a lack of corporate independence or formalities.

Plaintiff's argument suggests that in many respects, by setting business priorities for MFI/ITL, conducting trainings, and providing various MARS materials to MFI/ITL, MARS may have "called the shots" for its subsidiary, MFI/ITL. As discussed by the *Topp* Court, however, "[t]he fact that a parent corporation *exercises the control which is necessarily incident to the full ownership of its subsidiary is insufficient*, without more, to justify ignoring the separate corporate entities." *Topp*, 814 F.2d at 837 (emphasis added).

The Court finds the *Topp* Court's analysis particularly relevant to the circumstances in the instant case. It is clear from the facts presented by both Plaintiff and Defendant that MARS was involved in many of the daily operations of MFI/ITL. This evidence, however, without additional proof of a violation of the separate corporate identities of MARS

and MFI/ITL, is not sufficient to ignore the separation between parent and subsidiary. The Court finds that the evidence indicating that MFI/ITL had a separate budget, paid and filed its own disability and income taxes, had its own offices, and kept separate offices, is sufficient to show that the separation between MARS and MFI/ITL " 'though perhaps merely formal', was real. It was not pure fiction." de *Walker v. Pueblo Int. Inc.*, 569 F.2d 1169, 1173 (1st Cir.1978) (quoting *Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333, 335–37, 45 S.Ct. 250, 69 L.Ed. 634 (1925)). Therefore, as MFI/ITL is not an alter ego of MARS, the Court must look to the principal place of business of Rivera's employer, MFI/ITL, for the purposes of diversity jurisdiction.

## III. Conclusion

The parties have stipulated that the principal place of business for MFI/ITL is in Bayamón, Puerto Rico, and have further stipulated that Plaintiff Rivera is a citizen of Puerto Rico (ISC Order, docket No. 23 at 2–3).[3] Therefore, as both Plaintiff and Defendant are citizens of Puerto Rico, the Court cannot retain jurisdiction over this case. The above-captioned Complaint is hereby **DISMISSED WITH PREJUDICE.**

**SO ORDERED.**

---

3. The Court, therefore, need not independently determine the location of MFL/ITL's principal  place of business.