Manuel B. FREIRIA, et al., Plaintiffs,

v.

George MITCHELL, et al., Defendants.

No. CIV. 99–2320(RLA).

United States District Court,
D. Puerto Rico.

Oct. 27, 2000.

Keith A. Graffam, Graffam & Biaggi, San Juan, PR, for Plaintiffs.

Rossell Barrios–Amy, Jose R. Perez Riera, McConnell Valdes, San Juan, PR, Thomas J.Code–Osorio, Reichard & Escalera, San Juan, PR, for Defendants.

### ORDER DISMISSING CLAIMS FOR LACK OF IN PERSONAM JURISDICTION

ACOSTA, District Judge.

Codefendant SPS STUDIOS, INC. ("SPS"), sued as BLUE MOUNTAIN ARTS, has moved the Court to dismiss the claims asserted against it in these proceedings alleging lack of *in personam* jurisdiction. The Court having reviewed the memoranda and documents submitted by the parties hereby finds petitioner's arguments prevailing.

### BACKGROUND

This action was instituted by MANUEL B. FREIRIA, MANFRE, INC. and PUERTO RICO REPS, INC. ("FREIRIA") against SPS and GEORGE MITCHELL and/or MITCHELL & ASSOCIATES ("GM/M & A") alleging essentially its wrongful termination as a sales

representative pursuant to Act 21 of December 5, 1990, P.R. Laws Ann. tit. 10, § 279 et seq. ("Act 21"). Plaintiffs further claim unjust enrichment and unpaid commissions.

## THE FACTS

The Court finds the following are the relevant facts which are duly supported by the affidavits and/or documents submitted by the parties.

1. SPS produces quality greeting cards, calendars, books and gifts for resale by retailers around the United States and the Caribbean under the trademark "Blue Mountain Arts".

2. SPS' business model is built around the production and sale of their products and does not require SPS to be present in all areas where it sells its products. SPS uses sales representatives to solicit orders for the sale of SPS products to retailers. These sales representatives are independent contractors who have full authority to determine and implement the business strategies which they feel will achieve the best results. They are divided into geographic areas of operation. They provide their own offices and materials. The sales representative decide how, when and where they will perform the solicitation of orders and who they will use to so perform. After these independent contractors solicit orders for SPS products, SPS may sell the products to the customers (retailers) if it deems it appropriate. At the sale representatives' discretion, they sometimes, in turn, enter into agreements with other independent contractors regarding which they are solely responsible. Some sales representatives also perform solicitation of services for other companies unrelated to SPS.

3. GM/M & A was designated by SPS as sales representative for certain areas of the Caribbean Basin, including Puerto Rico, since **May 21, 1985.**

4. SPS contacts with GM/M & A have always been carried out in the latter's Florida offices. GM/M & A does not have offices in Puerto Rico.

5. In **1988** GM/M & A entered into an agreement with FREIRIA authorizing it to solicit orders for SPS's products.

6. SPS was not involved in GM/M & A's decision to enter into an agreement with FREIRIA, or in devising the terms of their agreement.

7. Pursuant to the aforementioned agreement, FREIRIA would visit the retailers, obtain their orders for BLUE MOUNTAIN ARTS card products and directly send the orders from its offices in Puerto Rico to the SPS principal offices in Colorado.

8. SPS, through its principal place of business in Colorado, would directly ship the orders for the Blue Mountain Arts card products to the retailers in Puerto Rico previously contacted by FREIRIA.

9. Any problems and/or questions pertaining to the ordered items would be handled directly between FREIRIA in Puerto Rico and SPS's principal offices in Colorado.

10. GM/M & A paid commissions to FREIRIA for the sales of SPS products. SPS never paid commissions to FREIRIA.

11. In a letter dated **July 26, 1999** GM/M & A informed MR. FREIRIA that FREIRIA's contract with GM/M & A was terminated. A courtesy copy of the letter was sent to SPS.

12. SPS has neither applied nor obtained a license to do business in Puerto Rico

13. SPS has never had any directors, officers, or employees domiciled n Puerto Rico, nor has it ever had offices in Puerto Rico.

14. SPS does not own or use property or have bank accounts in Puerto Rico.

## THE LAW

◼ Movant having challenged our authority to exercise personal jurisdiction

over SPS it becomes plaintiffs' burden to prove the necessary facts to support a prima facie case that defendant is indeed amenable to judicial proceedings in this forum. *Am. Express Int'l, Inc. v. Mendez–Capellan,* 889 F.2d 1175, 1178 (1st Cir. 1989); *Escude Cruz v. Ortho Pharm., Corp.,* 619 F.2d 902, 904 (1st Cir.1980); *Rosich v. Circus & Circus Enter., Inc.,* 3 F.Supp.2d 148, 149 (D.P.R.1998); *Castro v. N.Y. City Bd. of Educ.,* 787 F.Supp. 26, 29 (D.P.R.1992).

In diversity cases such as the one before us, *in personam* jurisdiction over a nonresident defendant is determined according to the Puerto Rico long-arm statute. *Pizarro v. Hoteles Concorde Int'l,* 907 F.2d 1256, 1258 (1st Cir.1990); *American Express,* 889 F.2d at 1178; *Rosich,* 3 F.Supp.2d at 149.

In pertinent part, the local long-arm provision reads as follows:

(a) Whenever the person to be served is not domiciled in Puerto Rico, the [courts] shall take jurisdiction over said person if the **action or claim arises because said person:**

(1) Transacted business in Puerto Rico...; or

(2) Participated in tortious acts within Puerto Rico....

P.R. Laws Ann. tit. 32, app. III, Rule 4.7(a)(1983) (emphasis ours).

### SPECIFIC JURISDICTION

The Puerto Rico long-arm statute expressly mandates that the claim asserted in the complaint "arise" from the contacts of the non-domiciled defendant with the forum. *Escude Cruz,* 619 F.2d at 905. *See also Redondo Constr. Corp. v. Banco Exterior De Espana, S.A.,* 11 F.3d 3, 5 (1st Cir.1993) (specific jurisdiction over defendant present inasmuch as claim resulted from defendant's acts within forum); *Am. Express,* 889 F.2d at 1179 (defendant corporation's activities within Puerto Rico unrelated to the causes of action asserted);

*Rosich,* 3 F.Supp.2d at 150 (plaintiff's injuries must be "connected with defendant's contacts with Puerto Rico"); *Pou v. American Motors Corp.,* 127 D.P.R. 810, 819 (1991) (*in personam* jurisdiction requires minimum contacts with the forum and that the claim be related to or arises from those contacts).

█ In other words, there must be a causal relationship between the defendant's activities within the forum and the claims asserted in the pleadings.

Whether certain events "arise out of" a nonresident defendant's actions within Puerto Rico is comparable or analogous to whether certain actions can be said to be the legal, or proximate cause of the injuries suffered by a plaintiff. This court has previously commented on the concept of legal causation. *Pizarro v. Hoteles Concorde Int'l,* 907 F.2d at 1258.

### The claims

Plaintiffs argue that *in personam* jurisdiction is proper because "SPS... committed tortious acts out of Puerto Rico that had consequences for Freiria in Puerto Rico."[1] However, the Court has not been able to identify a single piece of evidence in support of this bold assertion.

Plaintiffs further contend that SPS had "continuous and systematic contacts" with Puerto Rico designed to promote its business locally. Assuming this to be true, the question is whether these contacts bear a causal relationship to the claims asserted in the complaint, i.e., termination of the relationship, unjust enrichment and unpaid commissions. We find they do not.

Even though plaintiffs have pleaded three (3) separate causes of action in this case all of them have a single common origin, i.e., the agreement to procure orders for Blue Mountain Arts products in Puerto Rico. As a matter of fact, the relief sought in this action arises precisely from

---

1. Plaintiffs' Opposition at 15.

the termination of its business pertaining to these items.

Petitioner's version of its relationship with plaintiffs stands unrefuted. SPS was not a party to the agreement regarding the sale of its products in Puerto Rico nor did it play any role in GM/M & A's decision to cease doing business with FREIRIA other than being advised on the matter. On the other hand, GM/M & A's control over the contract terms and its conclusion is amply supported by the letters exchanged between the parties.

For instance, FREIRIA's concerns regarding the scope of its duties and practices followed under the relationship were addressed to GM/M & A. In a letter dated **August 23, 1997** FREIRIA requested "[a] confirmation from Mitchell & Associates that Puerto is our protected sales territory, you will not send anyone else into the island to sell Blue Mountain Arts..." (emphasis ours).

Contrary to plaintiffs' reading of the correspondence on record SPS did not control the relationship nor did it in any way affect GM/M & A's decision to cease doing business with FREIRIA. Its hands-off position is readily apparent in the following segment of a letter dated **September 24, 1997** sent by SPS to FREIRIA in response to what appears to be MR. FREIRIA's concerns:

> The way I see it, you have two options. You can either work things out with Mitchell and Associates or you can resign. It is NOT AN OPTION for things to remain unsettled as they are now. **It would be illegal for me to guarantee you the line if you resign from Mitchell and Associates**, and therefore I make no such guarantee.
>
> .      .      .      .      .
>
> If you work things out with Mr. Mitchell, then you will continue selling the line in PR under his conditions. If you can work out a transition of the line

from him to you, that **does not concern us**, and I wish you the best of luck!

(Emphasis ours).

SPS' limited role in the relationship is also evidenced by an October 14, 1997 letter from GM/M & A to FREIRIA which reads:

> [SPS] has **encouraged** me to give you another opportunity to represent Blue Mountain for the entire island of Puerto Rico...
>
> I am including a copy of my **revised contract** for you to sign and **return to my office**...
>
> .      .      .      .      .
>
> You will be expected to work within the guidelines that have been sent to you in the past. These are the same guidelines that all **my representatives** are expected to follow.

(emphasis ours).

Further, all evidence points to the conclusion that the decision to put and end to the business relationship was taken exclusively by GM/M & A. The fact that SPS was supplied with a copy of the termination letter the day before is not indicative of any other conclusion. The cover letter accompanying the communication clearly indicates that it was GM/M & A's exclusive decision to terminate its business relationship with FREIRIA and that the purpose of this letter was merely to keep SPS posted on the matter.

> **I have decided to terminate [FREIRIA] from my organization.** The following is a copy of my letter to him. I wanted to let you know that this was going to be done before sending this on to him. I know you would want to be prepared for any questions.

(Emphasis ours).

Further, the letter dated **July 26, 1999** informing FREIRIA of its termination and the reasons in support thereof was signed by GM/M & A. It also underscores the fact that it was GM/M & A who had control

over the relationship. In pertinent part, it reads:

> You continue to ignore to go through my office on all matters pertaining to Blue Mountain Arts. No matter what I request, you choose to ignore my organization's guidelines that have been sent to you on numerous occasions. You do not believe you have to answer to me for anything even though you represent Blue Mountain for my organization. You even went as far as to try to have Blue Mountain taken away from me in Puerto Rico.

(Emphasis ours).

In sum, the conduct of SPS in this forum was limited to mailing out orders to FREIRIA's client. There is no evidence of a connection between this activity and the termination of the agreement. No claim has been asserted in these proceedings regarding the ordered items nor is SPS liable for any allegedly unpaid commissions.

■ Therefore, pursuant to the applicable statutory principles proscribed in the Puerto Rico long-arm provisions we conclude that there is no causal relationship between SPS's activities within this jurisdiction and plaintiffs' claims.

## CONCLUSION

Based on the foregoing, the Motion to Dismiss for Lack of in Personam Jurisdiction filed by codefendant SPS on July 17, 2000 (docket No. 8) [2] is **GRANTED.**

Judgment shall be entered accordingly.

IT IS SO ORDERED.

---

2. *See also* Opposition... (docket No. 17); Reply to Plaintiffs' Opposition... (docket No. 18); and plaintiffs' Sur–Reply..., submitted along with Notice of Filing Dispositive Motion... docket No. 16, which Motion shall be entered in docket as filed.